FLOWER *v.* BRICKER.

Opinion delivered January 7, 1929.

*Daily & Woods* and *C. W. Knott*, for appellant.

*Owens & Ehrman*, for appellee.

SMITH, J. The New England Securities Company was for many years engaged in making farm loans on farm property in Arkansas and other States, and its custom was to take a first mortgage for the loan and a second mortgage for its commissions or agent's fees. The first mortgage would be sold to investors and the second retained by it. In assigning the first mortgages the company would execute an agreement with the assignee whereby "it agrees to look after the collection of the interest as it falls due, and the principal at maturity, and to remit same; to keep insurance in force for and on behalf of the holder hereof according to the provisions of the deed of trust securing this bond; to make an annual examination of the taxbooks and to report any delinquencies, and to advise the holder hereof of the status of the borrower and the condition of the security whenever deemed necessary, hereby guaranteeing the deed of trust securing this bond to be a first and valid lien upon the premises described therein."

On October 23, 1919, J. T. Tye borrowed $3,000 from the securities company and gave a deed of trust to secure it, and at the same time executed to the securities company a second deed of trust covering the commissions charged for making the loan.

The securities company, on or about January 7, 1920, sold this first deed of trust, with other first securities, to the Winooski Savings Bank, a Vermont corporation, and executed an agreement containing the recitals above quoted in regard to the taxes, etc. The annual interest on this loan, amounting to $180, was paid promptly for the years 1920, 1921, 1922, 1923, 1924 and 1925, and the taxes were also paid for those years, the payments being made, as the bank later learned, by the securities company and not by Tye.

The securities company became insolvent, and Henry C. Flower was appointed receiver for it, and thereafter the annual interest on this loan was not paid to the bank,

and default was made in payment of the taxes on the land. Thereupon the bank caused suit to be brought by the substituted trustee to foreclose its lien. Tye, who was made a party, filed no answer, but an answer and cross-complaint was filed by the receiver for the securities company, in which there was set up a claim for the payment of certain taxes which, it is admitted, were paid by the securities company for the years 1921 to 1925, both inclusive, the contention being that the taxes were paid by the securities company as a junior mortgagee for the purpose of protecting its interests under a junior lien, and therefore within the rule that, where a junior mortgagee pays taxes for the protection of its security, it thereby becomes entitled to be subrogated to the rights of the State for the amount thereof.

Officials of the securities company testified that these taxes were paid at the request of the bank and upon the agreement that the bank would reimburse the securities company for the taxes; but this was denied by the representatives of the bank, who testified that they supposed Tye was paying the taxes and the interest, and that the loan was carried on that assumption, and they were not advised to the contrary until default was made in the payment of the taxes and interest.

Pursuant to its agreement so to do, the securities company advised the bank each year that the taxes had been paid, and as late as February, 1926, wrote the bank as follows: "Beg to advise all taxes in this case are paid. I mean all taxes prior to the year 1925."

The court ordered the foreclosure of the deed of trust sold to the bank as a first lien on the land, and denied the prayer of the receiver for subrogation for any of the taxes paid by the securities company, and this appeal is from that decree.

It is conceded that, where a junior incumbrancer pays taxes to protect his security and that of a prior lien as well, he is entitled to be subrogated to the paramount lien of the State or the taxing agency for the amount of such taxes, and may enforce this payment as a lien hav-

ing the same priority which the taxing agency had. *Lester v. Richardson,* 69 Ark. 198, 62 S. W. 62. We think, however, that doctrine is not applicable here.

We think the testimony does not show that the securities company paid the taxes upon the faith of a promise by the bank to refund them or to allow the securities company credit therefor. These tax payments were made for five years, and no such credit was given, nor does it appear to have been asked prior to the beginning of this litigation.

The testimony shows that the securities company acquired title to the land from Tye by a deed in 1923. This deed was of course taken subject to the deed of trust which had been assigned to the bank, and it was thereafter to the interest of the securities company to have the bank continue to carry the loan, and this it did upon the assumption that the mortgagor was paying the taxes and interest, and this it ceased longer to do when default was made in the payment of the taxes and interest.

The testimony shows that, after obtaining the deed from Tye, the securities company collected the rents for the years 1924, 1925 and 1926, amounting to $495.03, and appropriated these rents to its own account, and that all the taxes paid by the securities company amounted to less than $125. It is argued, however, that, while the rents collected by the securities company exceeded the taxes paid by it, the rents did not equal the taxes and the interest which the securities company paid to the bank. This is true, but it is unimportant.

Certainly, after acquiring the title to the land the securities company should have paid the taxes when the rents were sufficient for that purpose. We are also of the opinion that it would be inequitable to permit the securities company to claim the right of subrogation for taxes paid prior to the time the title was acquired. We find the fact to be that there was no promise on the part of the bank to refund these taxes or to allow the securities company credit for them. On the contrary, as late as 1926 the securities company reported that all taxes prior

to those of the year 1925 had been paid, and there was no intimation that the mortgagor himself had not made these payments and the interest payments as well. Had the bank known in 1921, when the taxes first became delinquent and were paid·by the securities company, that the borrower was not paying them, it could then have determined whether it would foreclose its prior lien, as it had the right to do. It was lulled into inaction by the implied representation of the securities company that the borrower was paying the interest and the taxes, when such was not the fact, as both were being paid by the securities company.

The right of subrogation was properly denied, and the decree is affirmed.