CANTLEY *v.* DANAHER.

4-3933

Opinion delivered October 21, 1935.

734

*W. E. Rhea* and *G. B. Segraves,* for appellant.

*Danaher & Danaher,* for appellee.

BAKER, J. At the risk of being tedious, a rather full and detailed statement of the facts in this case is made, for the reason that the writer believes such statement of the admitted facts obviates the necessity of much argument.

On January 5, 1923, the St. Louis Joint Stock Land Bank made a loan to J. D., Martha R., and Sallie S. Hawley, in the sum of $14,000. The borrowers executed their note for this money, and gave a first mortgage on 302 acres of land in Lincoln County, as security for the payment of the debt. The debt was payable in 66 semi-annual installments.

Shortly after the execution of this first mortgage, a second mortgage, or deed of trust, was given by the same parties to M. Danaher, conveying the same land. This second mortgage secured a debt of $2,400, and matured two years after date.

The Hawleys paid to the bank the first semi-annual installment, due on August 3, 1923, and M. Danaher paid the bank other installments, from January 11, 1924, to July 31, 1931, the last payment being made on the last-mentioned date. On April 5, 1932, the bank filed its suit to foreclose and declared the entire debt due and payable, in accordance with an acceleration clause in the mortgage or deed of trust. The bank paid some of the taxes that matured upon the land, and at the time the suit was filed for foreclosure, there was due and owing to it $15,537.43. At the time of the filing of this suit by the bank to foreclose, Danaher had paid $2,988.37, as taxes and special assessments upon the land, and also several thousand dollars of the installments due by the Hawleys to the bank. The first mortgage or deed of trust executed by the Hawleys to M. Danaher contained this provision:

"And if the parties of the first part shall fail to make such payments of taxes, legal assessments, or interest (referring to interest on first mortgage debt to St. Louis Joint Stock Land Bank) the party of the third part (Danaher) may do so, at his option, and all such payments so made by the third party shall be added to and become a part of the principal indebtedness hereby secured."

At the time Danaher quit paying, on August 6, 1929, he had advanced or paid out on taxes, special assessments, installments, insurance, etc., sums, together with the amount secured by the deed of trust of January 19, 1923, which aggregated $10,188.55, and on that date the Hawleys gave to Danaher a new note for that amount, due four years after date, and a new deed of trust to secure this last note, which recited:

"We, J. D. Hawley, Martha R. Hawley, and Sallie S. Hawley, acknowledge that the indebtedness due by us to M. Danaher, secured by deed of trust now of record in Record Book 27, page 29, of the records of Lincoln County, Arkansas, has not been paid, and that at our request M. Danaher has paid out for taxes, insurance, and repairs on the land described in said deed of trust, and for amounts due to the St. Louis Joint Stock Land Bank at various dates large sums of money; and we have made some payments to said M. Danaher. Upon the account between us, allowing proper interest for the sums paid by us to him, there is now due from us to said M. Danaher, principal and interest included, the sum of $10,-188.55, which we hereby promise to pay to said M. Danaher on or before four years after this date, with interest thereon payable annually at the rate of six per cent. per annum from this date until paid. We hereby renew the said deed of trust, recorded in Record Book 27 at page 29 as aforesaid to secure payment of all of said indebtedness.

"If grantors shall fail to pay such taxes, legal assessments, or insurance premiums, when same shall become due, or to do any and all things herein mentioned, then the said M. Danaher may do so, and all sums so expended by him shall be due and payable on demand, shall bear interest at the rate of six per cent. per annum

from the date of such expenditure until repaid, and shall be added to and become a part of the principal indebtedness hereby secured, and the interest on such expenditures shall be compounded annually until paid."

During this interval between the dates of the execution of the two mortgages executed by the Hawleys to Danaher, these numerous payments of taxes, special assessments, and installments were made by Danaher for and on behalf of the Hawleys. This is evidenced, not only by the recitals in the two mortgages quoted above, but by numerous letters written by Danaher to the bank. Extracts are copied from some of the letters written when tax receipts were sent to the bank, or when remittances were made to it by Mr. Danaher. The effect of other communications is shown also.

On November 26, 1925, Mr. Danaher wrote, in regard to the tax receipts, which he had sent to the bank, and in asking the return of these receipts to him: "I will need them in collecting the money from Hawley, or in getting judgment if I have to foreclose."

On July 26, 1926, he wrote: "I paid the taxes for him." The tax receipt was made to "J. D. Hawley by M. Danaher."

On April 4, 1927, he sent the bank tax receipts made to J. D. Hawley by M. Danaher. In 1928 the tax receipt was to J. D. Hawley by M. Danaher.

On July 13, 1928, he wrote the bank as follows: "I merely have been making the payments to you for Mr. Hawley under arrangements with him."

Prior to that time, on October 11, 1927, in regard to the selling of some lots, he wrote the bank as follows: "If you are willing to let him sell on these terms, I will agree that the entire purchase price be paid upon his debt to you."

On July 26, 1929, some improvement taxes were paid and the receipts made to J. D. Hawley by M. Danaher. All of these payments, prior to August 6, 1929, were included in the note and deed of trust of that date, executed by the Hawleys to M. Danaher.

Thereafter, on March 18, 1930, and April 9, 1931, taxes were paid by M. Danaher. These receipts were issued in his name, in the aggregate amount of $532.77.

Danaher joined with Hawley in renting the lands to W. E. Tooke in February of 1928 for five years, and to J. N. Scruggs in March, 1930, for three years. Rent notes were made payable by these parties to Hawley and M. Danaher, and were indorsed by Hawley to Danaher, who collected rents from the lands.

One of the provisions for the acceleration of the mortgage or deed of trust to the bank, was as follows:

"It is further agreed that the debt secured herein may be declared due and payable in its entirety at any time on the failure of the mortgagor to pay taxes, either general or special, or assessments, before delinquency."

Danaher testified that he had received, in payment upon his indebtedness, for the account of Hawley, payments made by Hawley and rents, in the aggregate amount of $3,231.64; he also testified that his purpose in paying the taxes and improvement district assessments was to protect his interest in his second mortgage, to prevent the lands from going delinquent.

After the second mortgage or deed of trust was made to M. Danaher, upon August 6, 1929, he paid taxes on the mortgaged land, amounting, as above stated, to $532.77. During this same period, however, he collected as rents upon the land, $1,210, nearly $700 more than his tax payments. During the years of 1931 to 1933, inclusive, the bank paid $667.78 taxes and special assessments. On February 27, 1932, the appellee, M. Danaher, wrote the bank as follows:

"The Hawley place has so deteriorated in value that in my opinion it is not worth the debt due you. The revenues received from it in 1930 and 1931 were not sufficient to pay the taxes. I have determined that I will make no further advancements for Mr. Hawley on the place at the present time."

In this foreclosure suit, M. Danaher was made a party defendant, filed his answer and cross-complaint, in which he claimed the right to be subrogated to the right of the State and the improvement districts, for the full amount of taxes and special assessments he had paid

and prayed that these payments be declared a first lien, in his favor, as against the bank. The decree of the chancery court was in accordance with this prayer of the cross-complaint, and Mr. Danaher was declared to have a first and paramount lien upon the land for all taxes and special assessments paid by him, superior to that of the bank, even as to the taxes and special assessments paid by the bank. As to the second note and mortgage executed by the Hawleys to Danaher a third lien was declared. The bank was declared to hold the second lien upon the property.

From this decree of the chancery court this appeal comes to correct errors alleged by the appellant.

If the foregoing statement is not complete as to all of the facts or details, it will suffice, at least to show the controversy between the parties, and any other pertinent facts the writer finds necessary to discuss will be stated in the opinion. By way of explanation it may be stated further that, after the filing of this suit, the St. Louis Joint Stock Land Bank became insolvent and S. L. Cantley was appointed receiver for it, and after his appointment the suit proceeded in his name as plaintiff.

The foregoing statement is the most favorable that can be made, as we understand the situation, for the appellees. In saying that Mr. Danaher paid the taxes upon this land for several years, there is a necessity for an explanation in regard thereto.

Hawley was on the property. When he borrowed the money from the Joint Stock Land Bank, he needed about $2,400 more money to pay off existing obligations than the Joint Stock Land Bank would furnish him, so appellee, Danaher, furnished this money. At the time of doing so, they evidently anticipated that in addition to the $2,400, other moneys would be furnished Hawley. So it was provided that whatever other funds were supplied by Danaher, they should be secured by the mortgage the Hawleys executed to him, and it was so provided in the mortgage dated January 19, 1923. That this theory is correct, there can be no doubt, when we read the provisions of the mortgage made by the said parties

to Danaher on August 6, 1929. We have just quoted from that mortgage, accepted by Mr. Danaher, in which the grantors say that at their request Mr. Danaher had paid out the taxes, insurance, and repairs on the land described in the deed of trust, and for amounts due the St. Louis Joint Stock Land Bank, at various times, large sums of money, which aggregated the sum of $10,188.55. No doubt, Danaher, thought he was well secured when he was furnishing or advancing these various sums of money from time to time, and he was charging them against the Hawleys to be repaid, if not otherwise, at least by the enforcement of the mortgage lien against the property. It will therefore be seen that the receipts issued by the tax collector, upon the checks sent by Danaher, clearly evidenced the proper party as payer of the taxes, "Hawley by Danaher." Danaher, perhaps had not contracted expressly that he would furnish more money, but he had taken an express agreement and contract from Hawley as to the kind of security he would have for whatever money he might advance. The parties carried out that agreement, when they executed the second mortgage to Danaher, upon a settlement between them as to the amount of indebtedness then due and owing.

An acknowledgment that these two mortgages executed by the Hawleys to Danaher are inferior to the mortgage executed to the Joint Stock Land Bank must be declared as a confession that there is error in the decree. The appellee has contracted for a second and inferior lien in the mortgages or deeds of trust. In this suit he insists upon a first lien by subrogation. As late as February 17, 1932, Danaher recognized the appellant as having a superior lien. That is the reason he assigns for not going further and making other advances upon the land for Hawley. He says at that time: "The Hawley place is so deteriorated in value that in my opinion, it is not now worth the debt due to you. The revenues received from it in 1930 and 1931 were not sufficient to pay the taxes. I have determined that I will make no further advancements for Mr. Hawley on the place at the present time. You are not carrying the loan for me, as

I owe you nothing.'' In his testimony he said: ''I quit making advances.''

In face of these statements, evidence of which was furnished personally by Mr. Danaher himself, we must urge that the moneys furnished by Danaher, whether for the payment of installments, special assessments, taxes, improvements or repairs, were funds advanced to Hawley, charged against him, secured by the mortgage of January 19, 1923, which mortgage was renewed by Hawley, when he executed a new and second mortgage on the 6th day of August, 1929, which was junior and inferior to the mortgage of the appellant.

When this last letter was written, which we have copied above, it was after Mr. Danaher had put into this venture of his all of the money for which he now sues upon his cross-complaint, and this letter is not consistent with the theory upon which he now sues, which theory is that the payments of taxes was made by him as a junior mortgagee to protect his lien as such. The advancements of money, or the furnishing of moneys to the Hawleys, upon their credit, for which security had been given, is a course of business inconsistent with the theory that he was required to pay taxes and assessments to protect his lien, and that he is therefore entitled to a first lien, instead of a second lien, for which he had contracted.

We are not unaware of the authority of *Ringo* v. *Woodruff*, 43 Ark. 469, or *Lester* v. *Richardson*, 69 Ark. 198, 62 S. W. 62, and other cases cited upon the same theory, and particularly § 256 of Hughes on Arkansas Mortgages.

It appears, however, that the doctrine of subrogation, as set forth in the several authorities mentioned, is not available to the appellee under the admitted facts in this suit.

Until a short time prior to the filing and trial of this suit, all parties believed the values were sufficient for their protection; so we cannot say, as a matter of law, that the bank, or its receiver, would have foreclosed the first mortgage, had it been advised positively, by Danaher, that he was paying taxes and assessments solely to protect his lien as a junior mortgagee, but there is am-

ple reason to say, and we think the evidence is conclusive in that respect, that Danaher advanced considerable sums of money, not only for the payment of taxes and assessments, but, as he suggests, for insurance and repairs and improvements, and also to pay installments due the holder of the first mortgage. He thought he had ample security therefor, and continued to think so until about the time he wrote the letter from which we have quoted above. If Danaher wanted to rely upon the right of subrogation for his protection, that fact should not have been left to conjecture or surmise, and the holder of the first mortgage should, at least, have been given notice of that fact. Appellee had notified the bank to send notices to him, instead of to Hawley. He was Hawley's attorney, according to his own statement. We think the evidence is conclusive that the appellee was not only furnishing the money, but he was paying for Hawley; therefore, discharging the liens for taxes and special assessments.

It must appear from the foregoing that the right of subrogation does not exist in favor of the appellee. There are other equities that must prevail.

"But, as the doctrine of subrogation was evolved by courts of equity for the prevention of injustice, it is administered, not as a legal right, but the principle is applied to subserve the ends of justice, and to do equity in the particular case before the court. Therefore no rule can be laid down for its universal application, and whether it is applicable or not depends upon the particular facts and circumstances of each case as it arises, and is subject to that most ancient maxim, 'he who seeks equity must do equity.' " *Federal Land Bank of St. Louis v. Richland Farming Company*, 180 Ark. 442, 445, 21 S. W. (2d) 954.

We have just suggested that the appellant had the right to know if the appellee was intending to insist upon subrogation, instead of acting for Hawley, making payments of taxes and special assessments for him, and thereby discharging the liens. It was not sufficient that the appellant knew that the appellee was forwarding the money. The bank was without knowledge of the agree-

ments or relations between Danaher and Hawley, except that he had advised the bank that he was Hawley's attorney, and to send all notices to him.

In the matter of the execution of lease contracts, wherein the appellee joined with Hawley, as lessor, in the taking of notes for rent, under these leases, which notes were payable to Hawley and Danaher, and by Hawley indorsed to Danaher, the appellee became, in practical effect, a mortgagee in possession. If he did not have the land actually under foot, he had all the rents and profits, all of the benefits of a mortgagee in possession, and, we think, charged with the concomitant results. Therefore the rule in the above cited case, *Federal Land Bank of St. Louis* v. *Richland Farming Company,* governs here.

"During this time, and while the appellant was unaware of the true situation, appellee was making use of its superior opportunities and collecting yearly sums materially lessening its debt, and judging by its subsequent conduct, was attempting to secure by a lien superior to that of the appellant the sums it was yearly paying in taxes and drainage assessments, while all the time the security was depreciating in value—so much so that, while, at the date of the giving of the two mortgages to the appellant and the appellee, it is probable it was thought ample security for both, it now is worth less than the appellant's debt and the taxes and assessments for the years for which appellee has made payment. Appellee knew the mortgagor was not discharging the general taxes and assessment liens, and the appellant did not; if it thought appellant, as senior mortgagor in that state of the case, was obligated to pay the taxes, it certainly ought to have notified it of the delinquency and given it the opportunity to do so. Instead of this, it voluntarily assumed the burden."

The parallel is inescapable. The same rule must obtain. To the same legal effect see *Flower* v. *Bricker,* 178 Ark. 764, 12 S. W. (2d) 394. The same equities prevailed, and the same rule was invoked, in *Deming Investment Company* v. *Citizens Bank & Trust Company,* 190 Ark. 258, 79 S. W. (2d) 274.

Therefore our view is that the appellee cannot be subrogated to the right of the State or the improvement districts for the taxes and special assessments, and that, for the reasons given, the decree of the chancery court is erroneous. Appellant had a first lien for taxes and special assessments paid, and a first mortgage or deed of trust.

The decree is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

HUMPHREYS and MEHAFFY, JJ., dissent.