CUPPLES FARMS PARTNERSHIP *v.* FORREST CITY
PRODUCTION CREDIT ASSOCIATION, et al.

92-150                                                839 S.W.2d 187

Supreme Court of Arkansas
Opinion delivered October 12, 1992

*The R.S. Irving Law Firm*, by: *Robert S. Irving*, for appellant.

*Wright, Lindsey & Jennings*, for appellee Cargill, Inc.

*Friday, Eldredge & Clark*, for appellee Forrest City Production Credit Association.

ROBERT L. BROWN, Justice. Cupples Farms, a partnership, appeals from an order denying its motion to intervene in ongoing litigation as a matter of right and its petition to be subrogated to the cross-claim of Forrest City Production Credit Association against Cargill, Inc. We agree with Farms that the circuit court's order was a final order which determined the rights of Farms in the litigation. Farms, however, failed to establish a right to subrogation; nor was its motion to intervene timely. For these reasons, we affirm the circuit court's decision.

In 1979, a separate partnership, Cupples Brothers, was farming in several Arkansas counties and had bumper soybean crops. The principal partners in Brothers were Horace Cupples and Jacob Cupples. As a result of the record crop, Brothers decided to store 11,778 bushels with Blanton Grain Company in Hughes; 7,267 bushels with a storage concern in Memphis, Tennessee; and 50,000 bushels at its farm headquarters in Crittenden County. In February 1980, Brothers borrowed $407,587 from Forrest City PCA to finance the crop that year. An additional $25,000 was borrowed from PCA in July 1980. Both loans were secured by the previously stored soybeans and future proceeds.

The year 1980, however, proved to be disastrous for soybeans due to hot weather, and in order to pay off the PCA loans, Brothers decided to sell the soybeans in storage. Unbeknownst to

Brothers, during the summer of 1980, Hubert Blanton, Jr., sold the 11,778 bushels stored at his company to Cargill, Inc., of Memphis, Tennessee and converted the proceeds of that sale to his own use. Blanton then persuaded Brothers to sell the remaining soybeans to Cargill. Brothers agreed, and Blanton did so, but when he was paid by Cargill, he again converted the proceeds. As a result of Blanton's actions, Brothers and PCA received none of the proceeds from these sales. PCA then demanded payment from Brothers on the 1980 loans.

In April 1981, Horace Cupples and Jacob Cupples formed a new partnership called Cupples Farms. When PCA made demand on Brothers, Farms negotiated a loan with Farmers Home Administration in the total amount of $851,690. The loan involved three promissory notes, all signed by Horace Cupples and Jacob Cupples as partners in Farms. The notes were secured by farmland owned by Farms. In May 1981, Farms used part of the loan proceeds to pay off the 1980 debt owed by Brothers to PCA.

Brothers and Horace Cupples filed suit against PCA, Cargill, and Hubert Lee Blanton, Jr. and Hubert Lee Blanton, Sr. on August 1, 1983, for negligence and various intentional torts resulting in the loss of the soybeans. Thereafter, PCA cross-claimed against Cargill for negligence in not observing reasonable commercial standards in determining ownership of the soybeans and PCA's lien and counterclaimed against Brothers and Horace Cupples. In an amended counterclaim in 1984, PCA referred to Farms as "the surviving entity" of Brothers. Horace Cupples on behalf of Brothers answered the counterclaim in part by stating that the assets and debts of Brothers and Farms were not the same.

In 1990, Farms filed for bankruptcy protection under Chapter 12. That same year Jacob Cupples died leaving Horace Cupples as sole partner of both Brothers and Farms. On March 6, 1991, Farms sought to intervene as a matter of right under Ark. R. Civ. P. 24(a) in the original lawsuit filed by Brothers and Horace Cupples and to assert subrogation rights to PCA's cross-claim against Cargill. A hearing was set on the motion to intervene and petition for subrogation on July 29, 1991, but before the hearing, PCA and Cargill informed the circuit court

that they had settled the cross-claim. The hearing proceeded in any event, at which time Horace Cupples testified that Brothers ceased to exist in early 1980 and Farms began winding up its affairs in 1990 after Jacob Cupples' death.

On September 17, 1991, the circuit court denied Farm's motion noting that "Horace Cupples still has his original and amended action pending against PCA and Cargill." The court found the motion to intervene to be untimely as a matter of law. It further found that Farms and Brothers were distinct entities and that Farms had no legal obligation to pay off Brothers' debt, thus rendering subrogation unavailable to Farms. On January 22, 1992, the circuit court dismissed the cross-claim of PCA against Cargill at PCA's request.

## I. APPEALABILITY OF ORDER DENYING INTERVENTION AS A MATTER OF RIGHT

PCA argues that Farms' appeal is from an interlocutory order that did not resolve all of the issues among all of the parties. While issues involving the parties remain to be decided in this case, the circuit court's order denying intervention to Farms as a matter of right precludes any other avenue for a Farms appeal.

Farms moved to intervene under Ark. R. Civ. P. 24(a):

Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Farms now urges that intervention is the only practical and effective means for it to protect its claimed interest in the litigation. This view was espoused in a recent Pennsylvania case. See Van Den Heuval v. Wallace, 555 A.2d 162 (Pa. Super. 1989), where an insurance company petitioned to intervene in a workers compensation case and to be subrogated to the employee's tort claim against a third party. The trial court denied intervention. The Superior Court held that the order was appealable and

reversed on the basis that there was no other way for the denied petitioner to appeal from that order. The court stated:

> It is unrealistic to suggest that [the carrier's] interest can be protected by a subsequent action against [the employee]. If the third party action is settled without notice to [the carrier], its subrogation claim is at the mercy of the employee who, having received payment, can dispose of the settlement proceeds as he chooses. The order of the trial court which denied intervention, therefore, has the practical effect of denying relief to [the carrier], which cannot fully protect its subrogation interests in any other way.

555 A.2d at 163. Other jurisdictions agree that an order denying intervention as a matter of right is appealable. *See, e.g., Hines* v. *D'Artois,* 531 F.2d 726 (5th Cir. 1976); *New York Public Interest Research Group* v. *Regents,* 516 F.2d 350 (2d Cir. 1975); *Ashland Public Library Board* v. *Scott,* 610 S.W.2d 895 (Ky. 1981); *but see United States* v. *United States Steel Corp,* 548 F.2d 1232 (5th Cir. 1977) (denial order not appealable when intervention petition filed after judgment).

We are aware that this view on the appealability of an intervention-of-right order is not unanimous. An alternative view maintains that the potential intervenor should have a legal right *in fact* to intervene as opposed to *claiming* a legal right to intervene. *See, e.g., Brotherhood of RR Trainmen* v. *B & O R.R. Co.,* 331 U.S. 519 (1947). But that requires a merits determination, and our rule is clear in stating that the movant need only claim a legitimate interest to warrant review. Additionally, it appears somewhat self-defeating to grant review conditioned on whether the movant has an actual claim and then undertake a full-blown analysis of whether the claim is valid in order to determine appealability. This same point was made in the Editorial Comment to an ALR annotation:

> As a matter of procedural economy, it seems incongruous to condition the permissibility of an appeal upon the same facts upon which its merits depend. Since in any event the court has to examine the two fundamental questions above stated [whether intervention is a mater of law or whether denial is an abuse of discretion], it is believed the better view [is] to hold that orders denying the

right of intervention are appealable.

*Appealability of Order Granting or Denying Right of Intervention*, 15 A.L.R.2d § 2, pp. 342-343. Moreover, this court and the Arkansas Court of Appeals, while not confronting the issue of appealability directly, have entertained an appeal in several cases from the denial of a motion to intervene. *See, e.g., Polnac-Hartman & Assoc* v. *First National Bank in Albuquerque*, 292 Ark. 501, 731 S.W.2d 202 (1987); *Billabong Products, Inc.* v. *Orange City Bank*, 206 Ark. 278, 644 S.W.2d 594 (1983); *Bank of Quitman* v. *Phillips*, 270 Ark. 53, 603 S.W.2d 450 (1980).

The Third Circuit Court of Appeals is of like mind. That court held in a suit interpreting intervention of right under Federal Rule 24(a), which is identical to our rule, that an order denying intervention of right is final and appealable. *Pennsylvania* v. *Rizzo*, 530 F.2d 501 (3d Cir. 1976). In so holding, the Third Circuit rejected the older rule that hinged appealability on whether the intervenor, in fact, did have a right to intervene and stated: "It is sufficient that intervention of right was sought and denied to render the denial appealable." 530 F.2d at 504.

We agree. The fact that Farms claimed an interest in the litigation which was found wanting by the circuit court does not undercut appealability. We hold that the denial of an intervention of right based on a claimed interest in the litigation which may be unprotected, such as we have here, constitutes an appealable order under Ark. R. App. P. 2(a)(2).

## II. TIMELINESS OF MOTION TO INTERVENE

The circuit court found as a matter of law that Farms failed to assert whatever rights it may have had in PCA's cross-claim in due time under Ark. R. Civ. P. 24(a). Farms argues, however, that over the seven-year period it believed PCA was protecting its interest in the cross-claim against Cargill and only recently concluded that it was not.

Timeliness under Rule 24(a) is a matter lying within the discretion of the trial court and will not be subject to reversal absent abuse of that discretion. *Polnac-Hartman & Assoc* v. *First National Bank, supra; see also, NAACP* v. *New York*, 413 U.S. 345, 365-366 (1973), where the Court stated that the trial court in exercising its sound discretion "must first be satisfied as

to timeliness" and that "timeliness is to be determined from all the circumstances." The issue then left to be resolved is whether the circuit court abused its discretion. We hold that it did not.

■ Factors to consider in a decision on timeliness are: 1) how far the proceedings have progressed; 2) any prejudice to other parties caused by the delay; and 3) the reason for the delay. *Leach* v. *Standard Register Co.*, 94 F.R.D. 192 (W.D. Ark. 1982). Delay in asserting a right is obviously a critical factor. For example, a federal district court in Pennsylvania denied intervention as untimely specifically because the intervenor chose to remain inactive for two-and-a-half years. *Dodson* v. *Salvitti*, 77 F.R.D. 674 (E.D. Pa. 1977).

Farms could have asserted its rights as early as 1981 when it paid the debt Brothers owed to PCA, but it declined to do so. We give little credence to its proffered explanation that it believed PCA was protecting its interest and only discovered late in the game that it was not. PCA had been sued by Brothers in 1983 and had counterclaimed against Brothers and sought to foreclose property owned by Farms in 1984. To contend that the arrangement between Farms and PCA was "friendly" and that PCA was prosecuting its cross-claim against Cargill on Farms' behalf are improbable assertions in light of the litigation. We certainly perceive no duty on the part of PCA to protect the interest of Farms. *See Dodson* v. *Salvitti, supra.*

■ Not protecting a claimed interest in over four hundred thousand dollars for either seven or ten years shows a profound dilatoriness in pursuing that claim. We cannot say that this failure on Farms' part has not prejudiced those remaining parties whose position is antithetical to that taken by Farms. Clearly, PCA and Cargill have sought to settle their differences. Moreover, the reason given for the delay does not withstand scrutiny. We hold that the circuit court's ruling on untimeliness was correct.

## III. RIGHT TO SUBROGATION

We further hold that the circuit court was correct in deciding that Farms had no legal right to be subrogated to PCA's cross-claim against Cargill.

The 1980 promissory notes made payable to PCA were signed by Horace Cupples and Jacob Cupples on behalf of Brothers and individually as well. The debt was paid off, however, by Farms. Only Farms sought to intervene in 1991 — not Horace Cupples or Jacob Cupples as individuals. The circuit court found that Farms was a separate and distinct entity from Brothers and had no legal obligation to pay Brothers' debt. The court then dismissed Farms' theory that it felt compelled to pay Brothers' debt because, otherwise, PCA would have ceased lending Farms money. The court stated that there was no convincing evidence to support it.

■ We agree with the circuit court and observe no legal interest of Farms in the action and can discern no legal obligation requiring Farms to pay Brothers' debt in 1980. With no legal interest to protect, Farms was little more than a volunteer and intermeddler which renders subrogation unavailable as a remedy. *Moon Realty Co.* v. *Arkansas Real Estate Co.*, 262 Ark. 703, 560 S.W.2d 800 (1978); *see also Baker* v. *Leigh*, 238 Ark. 918, 385 S.W.2d 790 (1965) (one having interest in real property who pays off debt is entitled to subrogation and is not a volunteer). Accordingly, subrogation is not appropriate. *See Blackford* v. *Dickey*, 302 Ark. 261, 789 S.W.2d 445 (1990).

■ There is one final point. Horace Cupples and Jacob Cupples were principal partners of both Brothers and Farms from 1979 until Jacob Cupples' death in 1990. If Brothers and Farms were found to be identical entities due to the commonality of partners or had ceased to exist, as Horace Cupples maintained at the hearing, then subrogation would not lie because the partners of the supposed subrogee, Farms, in effect, would be satisfying their own debt owed as the partners for Brothers. Subrogation is only available when one, not primarily responsible for the obligation, pays it off. *Blackford* v. *Dickey, supra; Whitley* v. *Irwin*, 250 Ark. 543, 465 S.W.2d 906 (1971). Here, arguably at least, Horace Cupples and Jacob Cupples satisfied their own debt using Farms as a vehicle for that purpose.

In sum, Farms claimed an interest in the litigation but does not qualify as a subrogee under these facts. Moreover, the motion to intervene was untimely. The circuit court, therefore, was correct in its decision, and there was no abuse of discretion.

Because we affirm the circuit court on the twin grounds of untimeliness and the absence of a subrogation right, there is no need to address the remaining issues raised in this appeal.

Affirmed.

GLAZE, J., concurs.