Carla Blakemore CARTON v. MISSOURI PACIFIC
RAILROAD; Travelers Insurance Company, Intervenor

93-132 865 S.W.2d 635

Supreme Court of Arkansas
Opinion delivered November 8, 1993.
[Rehearing denied December 20, 1993]

8

*J.R. Nash*, for appellant.

*Friday, Eldredge & Clark* by: *Herschel H. Friday, Elizabeth J. Robben* and *Scott J. Lancaster,* for appellee.

*Wright, Lindsey & Jennings,* by: *Mark L. Pryor,* for intervenors.

ROBERT DUDLEY, Justice. Appellant Carla Blakemore Carton, the operator of a diesel fuel delivery truck owned by Gulf Oil Corporation, slipped and fell in January of 1979, while unloading diesel fuel at Missouri Pacific's facility in North Little Rock. In 1981, she filed suit against appellee Missouri Pacific in federal district court. In 1984, she took a voluntary nonsuit. Later in 1984, she refiled the same suit in federal district court. In 1985, the district court dismissed the suit for lack of diversity. The district court made the dismissal with prejudice because it found that she had fraudulently attempted to manufacture diversity jurisdiction, and, as a result, was not entitled to the one-year period to refile after a voluntary nonsuit. The Eighth Circuit Court of Appeals affirmed the dismissal based on the lack of diversity, but directed the district court to enter a dismissal without prejudice. The district court entered the order February 19, 1987.

On April 23, 1987, appellant refiled the suit against appellee in the Circuit Court of White County. Appellee Missouri Pacific filed a motion to dismiss on the ground that the statute of limitations had run. The circuit court granted the motion. On appeal, we held that appellant could take advantage of the saving statute and reversed and remanded for trial. *Carton* v. *Missouri Pac. R.R.*, 295 Ark. 126, 747 S.W.2d 93 (1988).

The case was tried on the merits in May 1989, and, at the conclusion of all of the evidence, the trial court granted a directed verdict in favor of Missouri Pacific. On appeal, we reversed. *Carton* v. *Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990). Trial of the case commenced again in June, 1991, but, after two days of trial, the trial court granted a mistrial because of unfair surprise testimony introduced by the appellant. The case

was reset for trial on the merits in August of 1992. The case was tried, and the jury returned a verdict in favor of appellee Missouri Pacific. Appellant, Carla Blakemore Carton, again appeals and assigns eight of the trial court's rulings as error. There was no reversible error, and we affirm the judgment.

Before this last trial commenced, appellant filed a motion requesting that the trial judge disqualify. The trial judge refused the request, and appellant assigns the ruling as error. Appellant does not contend that the trial judge was biased or acted with partiality in any manner. She does not contend that the trial judge acquired any personal knowledge of the disputed facts outside the knowledge he gained while presiding over the case. She does not contend that the trial judge violated Canon 3 of the Code of Judicial Conduct in any manner. Rather, she contends that, because there had been two reversals and a mistrial, the trial judge created the appearance of bias against her cause of action in the mind of the public and committed reversible error in refusing to disqualify. Appellant cites no authority for such an argument, and we are not aware of any. She cites one case for the proposition that a court must not only be fair but must also appear to be fair. If we were to accept the premise of appellant's argument to its logical end, a trial judge would be required to disqualify from a case if he ruled against one party's motions or objections throughout a trial. Such a result is not even suggested by the Canons. The Canons suggest that a judge disqualify when his impartiality might *reasonably* be questioned. Here, the impartiality of the trial judge could not be reasonably questioned.

The first reversal by this court was primarily on an abstruse issue of law. Suit was first filed in state court in 1987, two months after the federal district court's final order, but eight years after the accident. The issue was whether appellant was entitled to the benefit of the saving statute. The trial court ruled that the statute of limitations had run. We reversed because the only evidence of fraud was the finding by the federal district court that appellant fraudulently attempted to manufacture diversity jurisdiction by misrepresenting her citizenship. However, because the federal district court was without jurisdiction, its judgment was without validity as evidence, and there was no other independent proof of fraud. Without the evidence of fraud recited in the judgment there was no evidence of fraud; therefore,

we reversed. No person would reasonably think that the trial judge's ruling evidenced any partiality.

 Next, the mistrial was caused entirely by the actions of appellant's attorney in attempting to present undisclosed evidence. Again, no person would reasonably question granting a mistrial on such an occurrence. The second reversal occurred when the trial court granted a directed verdict for appellee. We reversed, and held that when the evidence was viewed in the light most favorable to appellant, there was substantial evidence from which the jury might have found that the railroad did not properly maintain its premises. It was a close case. After remand, the trial judge manifestly thought he was impartial, and could retry the case fairly. The record reflects that he presided with impartiality, with diligence, and with patience. There was no valid reason for the judge to disqualify. A judge has a duty to remain in a case unless there is some valid reason to disqualify.

Appellant's next assignment involves a ruling allowing appellant's employer's worker's compensation carrier to intervene to protect its right of subrogation. Section 11-9-410(a)(1) of the Arkansas Code Annotated of 1987 gives the carrier the right to intervene, and, as a result, the carrier could intervene as a matter of right under ARCP Rule 24(a). Even so, appellant contends that the intervention was not timely. The record refutes the argument. The carrier first intervened when the action was pending in the federal district court. Later, in 1981, a stipulation was signed by the attorneys for the carrier and for appellant, which provided the carrier had a lien in the federal action. The action in federal court was dismissed, and the cause was refiled in circuit court. Appellant did not notify the carrier of the action in circuit court. Rather, the trial court notified the carrier, and the carrier immediately filed a motion to intervene. Subsequently, the trial court granted a directed verdict, and appellant appealed. Appellant did not notify the carrier of the appeal. The case was reversed and remanded. Again, appellant did not notify the carrier that the action was to be retried. Once more, the trial court caused the carrier to be notified, and the carrier again moved to intervene. The trial court then allowed the intervention at issue.

 Timeliness of intervention under ARCP Rule 24(a) is a matter within the discretion of the trial court and will not be

disturbed absent some abuse of discretion. *Cupples Farm Partnership* v. *Forrest City Prod. Credit Ass'n*, 310 Ark. 597, 839 S.W.2d 187 (1992). Timeliness is to be determined from all the circumstances. *Id.* at 603, 839 S.W.2d at 190-91. There is nothing in the record to show that the trial court abused its discretion in allowing the intervention.

Appellant additionally argues that the ruling allowing intervention should be reversed because the intervenor refused to share in the costs of this litigation. Appellant relies on *Northwest National Insurance Co.* v. *American States Insurance Co.*, 266 Ark. 432, 585 S.W.2d 925 (1979), as authority for her argument. The cited case holds that when an insurance company has benefited from the work done by the insured's attorney, there is no inequity in requiring it to bear its fair share of the collection expense. However, in the case at bar, neither appellant nor the carrier has collected any money from the work done by appellant's attorney. Proceeds of a recovery simply are not at issue. Instead, the issue is whether the carrier should be allowed to intervene to protect its right of subrogation when the applicable statute gives it the right to do so. Again, the trial court ruled correctly in allowing the intervention.

Appellant makes another assignment that is equally ambage. She argues on appeal that the trial court erred in refusing to allow her to introduce evidence that, as a result of the accident, she became emotionally incompetent to handle her own financial affairs, and, consequently, it was necessary for her to incur legal expenses to set up an irrevocable trust to administer any recovery she might receive from this suit. The authority cited by appellant is A.M.I. 2205, which allows a party to recover for mental anguish. We do not reach the issue because the same argument was not presented to the trial court. The issue the trial court ruled on came about as follows. Months before the trial commenced, the trial court wrote the parties a letter which provided, in the material part:

> If the existence, advisability, and basis of the trust account are admitted as evidence, the defendant may present competent evidence challenging those issues. There must be, of course, competent evidence that the trust was created as a proximate result of the plaintiff's injuries.

After the letter was received by counsel, but before the trial started, Missouri Pacific moved to prevent mention of the trust. Appellant argued that the costs incurred in setting up the trust were allowable damages. The court granted Missouri Pacific's motion, but stated that it would reconsider if a proper foundation were laid by appellant at trial. During appellant's case-in-chief, in her examination of her psychologist, Dr. Doug Stevens, counsel asked the court to go into chambers for a discussion of the trust issue. At the time, appellant's attorney had just asked Dr. Stevens if he recommended establishing some mechanism for handling appellant's finances, and appellee had objected. In chambers, the trial court ruled:

> I suspect that if that information is elicited from the witness as one of the bases for his evaluation and recommendation for this plaintiff, on that basis it may be admissible.

A few moments later, while still engaged in the same proceeding in chambers, the trial judge said:

> Frankly, I do not know what impact information the trust disclosed to the jury has upon—I simply don't know what the questions or answers will be.

Still later during the same colloquy in chambers, and in response to appellant's attorney, the trial judge stated:

> You may be right. As I said, I don't know what the questions and answers are going to be.

> The details of the trust agreement really do not go to the issue of liability or damages, and the court has indicated that the plaintiff may establish that a recommendation was made by this doctor to establish a mechanism for the plaintiff's affairs to be handled by somebody else. Maybe not that far, but once you get past that, Mr. Nash, what would be the relevance of establishing the details of the trust agreement?

Appellant asked no questions about alleged damages incurred as a result of creating the trust. She did not lay the foundation as requested by the court. The trial court ruled correctly on the issues that it was asked to rule upon.

Appellant also assigns as error the trial court's refusal to instruct the jury on damages for the aggravation of a pre-existing condition. *See A.M.I. 2203.* Again, the record does not support the argument. Appellant suffers from a degenerative congenital spinal disorder, spondylolisthesis, which was asymptomatic prior to the accident. On appeal, she argues that it was aggravated by the accident. However, at trial, while appellant and a physician, Dr. Hundley, testified to the pre-existence of spondylolisthesis, no one testified that this condition was aggravated by the accident. In response to appellant's request for the instruction the trial court ruled:

> I'm just looking at my notes during the testimony of Dr. Hundley, in which I believe he said that it was his understanding that the prior congenital problem which the plaintiff had did not relate to pain complaints from the fall [this cause of action], and in regard to the car wreck in which she was involved [a separate incident], that the car wreck was not an aggravation of her back.

Appellant said nothing in response to the trial judge's recollection of the testimony. A trial court is not obligated to give a requested instruction absent some testimony suggesting aggravation. *See Simpson* v. *Hurt*, 294 Ark. 41, 740 S.W.2d 618 (1987).

Appellant also assigns as error a ruling which, she contends, violated the collateral source rule. There is no need to discuss the issue, because, even if the ruling might have been in error, we would not reverse. We have said that it is error to disclose to the jury compensation that is not to be deducted from the recovery because of the strong possibility of prejudice. *Amos* v. *Stroud*, 252 Ark. 1100, 482 S.W.2d 592 (1972). However, in this case the jury returned a general verdict for the defendant. The jury may well have reached its verdict by determining that the defendant was not negligent or that plaintiff's fault was equal to or greater than that of the defendant. Consequently, the jury may have never considered the issue of damages, and plaintiff-appellant cannot show prejudice. We will not reverse in the absence of a showing of prejudice. *See Peters* v. *Pierce*, 314 Ark. 8, 858 S.W.2d 680 (1993), a case which is precisely in point.

██ ██ In two separate assignments, appellant contends that the trial court committed reversible error in refusing to allow her to introduce three photographs at two different times during the trial. The proffered photographs are not attached to appellant's abstract. Under Ark. Sup. Ct. R. 4-2(a)(6), photographs which must be examined for a clear understanding of the testimony must be attached to the abstract unless this procedure is shown to be impracticable and waived by the court on motion. When an exhibit is necessary to an understanding of the testimony about an issue, but is not included in the abstract, we have summarily affirmed on that issue. *Pennington* v. *City of Sherwood*, 304 Ark. 362, 802 S.W.2d 466 (1991). Appellant contends in her reply brief that she proffered the three photographs on the first occasion so that the jury could see "the actual area of spills and the tremendous difficulty the drivers for Gulf Oil had in emptying their hoses at the appellee's diesel fuel unloading facility because of the height of the intake spigot." We cannot determine from the verbal description of the photographs in the abstract whether the photographs actually depict spills that would cause tremendous difficulty for drivers, and we cannot determine whether appellant suffered prejudice by their exclusion. A party must not only show error, but must also show prejudice. *Baldwin Co.* v. *Ceco Corp.*, 280 Ark. 519, 659 S.W.2d 941 (1983). Since it is necessary for us to view the photographs to decide this point, and the photographs are not attached to the abstract, we summarily affirm the trial court's ruling excluding the proffered photographs the first time they were offered.

We do however reach the merits of appellant's assignment about the second time the same pictures were offered because the descriptions of the photographs are sufficient for an understanding of that issue. The photographs are described as showing the surface area of a part of the unloading facility. The surface of the facility is covered with a type of gravel known as SB-2 crushed rock. Each of the rocks is porous and is crushed to about three-fourths inch in diameter. The porous gravel was placed over the ground so that it would absorb the fluids that would be spilled by the unloading trucks. Appellant's theory of the case was that Missouri Pacific was negligent in allowing oil soaked gravel to remain on the ground so long that it became dangerous for an invitee to walk on it. Under her theory, Missouri

Pacific was negligent in not taking up the old oil soaked gravel and then spreading clean gravel over the grounds. After appellant was injured, appellee Missouri Pacific did spread clean gravel over the area. The photographs, taken four months after the accident, reflect the clean gravel that was placed on the surface. The trial court refused to allow the pictures into evidence, and appellant assigns the ruling as error.

Rule 407 of the Arkansas Rules of Evidence prohibits a party from using, as proof of negligence, evidence of subsequent remedial measures taken by the other party that would have made the accident less likely to occur if taken before the accident. These were pictures that reflected remedial measures taken by the defendant. The trial court correctly applied this rule, and we could end discussion of the point with that statement. However, appellant argues that our case law makes the photographs admissible, and cites *Riggan* v. *Langley*, 238 Ark. 649, 383 S.W.2d 661 (1964), as authority for her argument. In that case we approved the admission of a photograph taken over a year after the accident. The photographs showed ditches that were more shallow than they had been at the time of the accident, and we approved the admission of the photographs and an explanation to the jury of the difference. However, the case involved changes in the ditches by a third party, not the defendant. Here, the defendant made the changes as a remedial measure. Thus, the cited case is not contradictory to the rule. If the trial court had admitted the proffered photographs, the appellee could have been prejudiced in the precisely the manner Rule 407 seeks to prevent.

Appellant additionally contends that the trial court erred in refusing to allow her to use the pictures to impeach the testimony of a witness about the height of a valve that is shown in the pictures. Under Rule 407, even if the pictures could not be admitted as evidence of negligence, they might be admitted for the purpose of impeachment. However, a trial court may prohibit their use for impeachment if it deems the evidence irrelevant under A.R.E. Rule 401, or prejudicial under A.R.E. Rule 403. *See* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* § 407[05], at 407-40 (1993). The trial court ruled that one of the pictures was more prejudicial than probative. In chambers, the trial court stated:

Plaintiff's request to use plaintiff's exhibit 4, which was earlier proffered, is not allowed. The reason is that it is agreed that plaintiff's alleged fall occurred at the first pump, which on this photograph is to the extreme right, and plaintiff's counsel indicated he wanted to show the picture to the witness to show the oil spillage at the second pump, which was to the left.

Without the picture being abstracted, we must take the trial court's finding of fact as correct. The valve at the first pump, where the fall occurred, is apparently on the far right side of the picture, but the left side of the picture shows some oil spillage on the new gravel. The trial court thought the prejudice from showing oil spillage on the new gravel at the second pump outweighed any probative value of viewing a pump that is in the far right side of the picture. Under these circumstances, we cannot hold that the trial court erred in its ruling. We are left then with the ruling on the other two pictures.

Shortly after the above quoted ruling, the trial court ruled in appellant's favor, as follows:

As I said yesterday, the court doesn't want to be put in a position of pre-trying this case to the court and then to the jury, and I don't want to anticipate the exact nature of the questions you plan to ask the witness. What I'm saying is you have asked the court to allow you to show those pictures to contradict the witness's testimony about the height of the intake valve and the location of the spillage, and I'm doing that on those two exhibits, so I'm granting what you asked me to do.

Appellant's counsel then asked to be allowed to introduce the two pictures and to explain that the gravel was new. The appellee objected to such an explanation. Appellant's attorney then stated, "I can't show the jury part of a picture. That's impossible." The trial court ruled, "I can't suggest to you how that could be done or not done. I will stick with my ruling."

In summary, the trial court ruled that the two pictures could be admitted for the purpose of impeachment, and appellant will not now be heard to complain of that ruling in her favor. However, appellant wished to go further than merely hav-

ing the photographs admitted; she asked to explain that the gravel had been replaced after her injury. The trial court declined to allow the explanation. The ruling was correct. The two photographs were admissible, if at all, for the purpose of determining whether the witness was telling the truth about the height of the valve. Explaining that the gravel was replaced after appellant's injury was not relevant to whether the witness was telling the truth about the height of the valve. In addition, since subsequent remedial measure evidence is deemed prejudicial under Rule 407, the trial court could have reasonably concluded that some kind of explanation about the photographs was more prejudicial than probative under Rule 403. Finally, the trial court stated that it did not want to be required to rule on questions before they were asked. The trial court asked appellant's counsel to ask specific questions so that appropriate rulings could be made. Appellant did not ask the specific questions, and we additionally affirm because counsel never asked specific questions and did not obtain specific rulings. We have no way of knowing what the explanation might have been and no way of knowing what a proffer might have shown.

We last address appellant's assignment asserting error for failure to remove a seated juror from the panel and replacing her with an alternate juror. The argument is two-fold: First, she contends that the juror is related by affinity to a paralegal in the office of appellee's law firm, and therefore, was disqualified, and, second, she contends the juror should have been disqualified because she had a material interest in the outcome of the case. Neither argument has merit.

Section 16-31-102(b)(1) of the Arkansas Code Annotated of 1987 provides, in part, "Except by consent of all the parties, no person shall serve as a petit juror in any case who . . . is related to . . . an attorney in the cause within the forth degree of consanguinity or affinity." Relation by affinity is "that which arises from marriage between the husband and the blood relations of the wife, and the wife and the blood relations of the husband." *North Ark. Ry. Co.* v. *Cole,* 71 Ark. 38, 39-40, 70 S.W. 312, 313 (1902). Degrees of relationship are counted by the number of degrees removed from the common ancestor. *See* Ark. Code Ann. § 28-9-212 (Supp. 1993). The statute provides for disqualification of a venireman who is related to an attorney

within the fourth degree. In this case, a seated juror notified the bailiff that she realized she had a relationship with someone involved in the case. The bailiff notified the trial court. The court invited the juror into chambers in the presence of counsel. In chambers, the court questioned the juror, and she replied that her husband was a cousin of a paralegal working for appellee's law firm. However, she said that she barely knew the paralegal and did not even know her last name. The court then asked counsel if they had any questions. Appellant's counsel replied, "No." The record does not establish whether the juror was a first cousin of the paralegal or a cousin five times removed. In a similar case, *Shaffstall* v. *Downey*, 87 Ark. 5, 7, 112 S.W. 176, 177 (1908), we wrote:

> The challenging party should have made out a prima facie case of the juror's relationship within the prohibited degree by questions asked by the juror or by the offer of other proof. Failing to do this, there was no error in the ruling of the court pronouncing him a competent juror.

Similarly, no error is shown in the ruling in this case. Since the juror is not shown to be within the prohibited degree of relationship, it is not necessary for us to decide whether a paralegal should be construed to be an "attorney in the cause" as defined in the statute.

Appellant's second part of this argument is that the juror should have been replaced because she had a material interest in the outcome of the case. Again, the record refutes appellant's argument. Near the end of the trial, appellant's counsel stated that the juror's husband, who is a lawyer, had possibly worked in a law firm with another attorney who had represented the appellant in another matter and appellant still owed that other attorney some money. There was no evidence whatsoever in support of the argument, and we affirm on that basis.

Finally, the workers' compensation carrier that intervened in this action thought it was necessary for it to supplement the abstract that appellant filed in this court. The carrier has asked for $630.00 as costs for the preparation of the supplemental abstract. Some, but not all, of the supplementation was necessary for us to have all of the facts necessary to an under-

standing of the intervention issue. Accordingly, on the carrier's motion, we allow $200.00 as costs for the preparation of the supplemental abstract.

Affirmed.