McLANE COMPANY, INC. *v.* Charlie DAVIS,
Director of the Arkansas Tobacco Control Board

00-417                                                    33 S.W.3d 473

Supreme Court of Arkansas
Opinion delivered November 16, 2000
[Substituted Opinion on Denial of Rehearing
delivered December 14, 2000.]

*Williams & Anderson LLP*, by: *Peter G. Kumpe, Stephen B. Niswanger*, and *Patrick W. McAlpine*, for appellant.

*Lax, Vaughn, Evans, & Fortson, P.A.*, by: *Audrey R. Evans* and *Dana M. Landrum*; and *Connie Carroll*, for appellee.

TOM GLAZE, Justice. This is the second appeal by appellant McLane Company, Inc., regarding the application of Arkansas's Unfair Cigarette Sales Act, Ark. Code Ann. § 4-75-701 *et seq.*, (Repl. 1999) ("the Act"). McLane Company is a wholly owned subsidiary of Wal-Mart Stores, Inc., and a wholesaler of

cigarettes and other products. In *McLane, Inc. v. Weiss*, 332 Ark. 284, 965 S.W.2d 109 (1998) (*McLane I*), we upheld the Act's constitutionality, and held it reasonably protects wholesalers and retailers from unfair competition and predatory pricing.

Prior to 1981, the Department of Finance and Administration ("DFA") limited cigarette wholesalers to a minimum sales price for cigarettes that was calculated as the cost of cigarettes to the seller plus two percent. In 1981, DFA raised that presumptive mark-up to four percent. This "cost of doing business" could not be lowered unless the wholesaler presented proof of a lesser or higher cost of doing business to DFA. In 1988, DFA promulgated Miscellaneous Tax Regulation 1988-2, which formally established the 4% mark-up and which allowed a wholesaler who desired to sell cigarettes for less than the "cost plus 4%" limit to request permission to do so in writing and offer information that supported the wholesaler's claimed lower cost of doing business.

On October 19, 1995, McLane requested that DFA repeal Regulation 1988-2 and the regulation's four-percent requirement. McLane submitted to DFA a detailed and lengthy cost analysis and report, reflecting a lesser cost of doing business than that presumed by either the Act or Regulation 1988-2. After reviewing McLane's proof, DFA promulgated Miscellaneous Tax Regulation 1995-5, which established that a wholesaler's cost of doing business is one-half of one percent of the basic cost of cigarettes. On October 25, 1995, the Director of DFA notified McLane in writing that, on November 6, 1995, McLane could commence to sell cigarettes at the new minimum price. The new regulation went out in the form of a directive to all wholesale cigarette distributors on October 25, 1995.

Claiming that McLane's "proof" violated the Act, a group of McLane's competitors filed suit on November 1, 1995, in Chicot County Chancery Court. The competitors obtained a preliminary injunction preventing DFA from implementing Regulation 1995-5 until such time as it had developed administrative rules and procedures to review statutorily-mandated proof such as cost surveys or audits to establish a lower cost of doing business, and established exactly what "proof" it would accept as part of the review procedure. On November 21, 1995, after the preliminary injunction had been entered, DFA moved to dismiss the suit in chancery court,

asserting McLane had not been joined as a necessary party despite the fact that the injunction directly named McLane.

Instead, McLane subsequently filed suit against DFA in November of 1995 in Pulaski County Chancery Court, alleging that the Act and Regulation 1988-2 were unconstitutional. McLane's competitors intervened, and the chancery court later upheld the constitutionality of the Act, a decision which we affirmed in *McLane I.*

■ Almost four years later, on July 15, 1999, McLane sought to intervene in the earlier November 1, 1995, ongoing suit in Chicot County, where it claimed a recognized interest in that litigation and asserted that its interests were not being fairly represented. McLane suggested its intervention was timely, since no developments or discovery had occurred since the injunction was entered in November of 1995. On December 29, 1999, the trial court denied McLane's motion to intervene as untimely.[1] McLane now appeals the trial court's denial of its motion on January 13, 2000, arguing that it had a right to intervene in the Chicot County Chancery Court action pursuant to Ark. R. Civ. P. 24(a), and that its intervention was timely because no significant discovery or developments had occurred in that lawsuit since November of 1995.

Rule 24(a) provides as follows:

> Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

On appeal, McLane argues that it has an economic interest in the outcome of the suit pending in Chicot County, and that its interest

---

[1] Subsequently, on March 14, 2000, the Chicot County court made its November 1995 preliminary injunction permanent, enjoining the Arkansas Tobacco Control Board (the agency which supplanted DFA as the appropriate regulatory body with respect to the Act) from promulgating regulations repealing Regulation 1988-2 until the Board 1) promulgated rules specifying the information needed to establish a lower cost of doing business, and 2) developed procedures to give wholesalers notice of the Board's review of an application to lower the cost of doing business.

will be impaired by the disposition of that suit if it is unable to intervene. Even if this were true, however, Rule 24(a) does not give an absolute right to intervene unless the application is timely. *Bank of Quitman v. Phillips*, 270 Ark. 53, 603 S.W.2d 450 (Ark. App. 1980). Here, McLane's application was untimely. Indeed, this court has noted that "the first three words of Rule 24(a) . . . are '*upon timely application* . . . .' A decision as to the timeliness of intervention is a matter within the sound discretion of the trial court and is subject to reversal only where that discretion has been abused." *Employers Nat'l Ins. Co. v. Grantors*, 313 Ark. 645, 647, 855 S.W.2d 937 (1993) (emphasis added). In exercising its sound discretion, the trial court must first be satisfied as to timeliness. *Cupples Farms Partnership v. Forrest City Prod. Credit Ass'n*, 310 Ark. 597, 839 S.W.2d 187 (1992) (citing *NAACP v. New York*, 413 U.S. 345 (1973)).

■ Timeliness is to be determined from all the circumstances, *Carton v. Missouri Pacific R.R.*, 315 Ark. 5, 865 S.W.2d 635 (1993), and those factors to consider in a decision on timeliness are as follows: 1) how far have the proceedings progressed; 2) has there been any prejudice to other parties caused by the delay; and 3) what was the reason for the delay. Delay in asserting a right is obviously a critical factor. *Cupples Farms*, 310 Ark. at 603 (motion filed after seven to ten years untimely, when parties had been aware of rights for all that time); *Lowell v. Lowell*, 55 Ark. App. 211, 934 S.W.2d 540 (1996) (motion filed three months after final order entered found to be timely).

As already stated, the Chicot County Chancellor specifically denied McLane's motion to intervene on the grounds that it was untimely, because its intervention was sought nearly four years after the November 1995 preliminary injunction had been entered. In these circumstances, our threshold inquiry is whether or not the denial of the motion was an abuse of the chancellor's discretion. Because we agree that McLane's motion was untimely, it is unnecessary to consider whether McLane had a sufficient interest to protect by its intervention.

■ McLane contends that it was an abuse of discretion for the trial court to deny its 1999 motion to intervene, because little or no activity took place in the years after the injunction had been entered. For this proposition, McLane cites *UHS of Arkansas, Inc. v.*

*Sherwood*, 296 Ark. 97, 752 S.W.2d 36 (1988), where this court held that timeliness is generally not a consideration where little or no litigation has ensued. The *UHS* case is distinguishable, however, because there, only twenty-three days had lapsed between the filing of the initial petition for declaratory relief and the motion to intervene, and the motion to intervene was made one day after the judgment was entered. Here, in stark contrast, McLane waited almost four years after the preliminary injunction was issued. McLane contends that the reason for the delay was because it was litigating the constitutionality of the Act in another forum. However, McLane fails to explain why it could not, at the same time, have entered the Chicot County action long before 1999. In addition, there was no urgent need for the plaintiffs to actively pursue a course of litigation, because the plaintiffs had gotten the relief they sought in the form of the preliminary injunction. Thus, the fact that little or no litigation had ensued since the chancellor's initial injunction is not particularly relevant, and McLane's delay remains inexplicable.

■■ McLane does mention in its reply brief that Regulation 1995-5 never became valid, and that it was not until a 1998 regulation, preventing the Tobacco Control Board from modifying Regulation 1988-2, was promulgated by the Board that the Chicot County lawsuit became relevant to McLane. It was this point in time, McLane argues, that it appreciated the potential adverse effect an adjudication of the Chicot County legislation might have on its interests. McLane cites *United States v. Jefferson County*, 720 F.2d 1511 (11th Cir. 1983), to support its argument. Once again, though, McLane's argument still fails to explain why McLane waited until the next year to file its motion to intervene. Indeed, instead of intervening at that point, McLane began lobbying the General Assembly to amend the Unfair Cigarette Sales Act to permit McLane to begin pricing cigarettes at the claimed lower cost. Like its actions in instituting the Pulaski County lawsuit, it was McLane's choice to approach the legislature instead of intervening; it should not now be permitted to complain that the Chicot County chancellor abused his discretion in finding the motion to intervene untimely.

We also note that McLane can still seek relief from the "cost plus 4%" pricing scheme. It can actively or legally encourage the Tobacco Control Board to establish the criteria and necessary proof

for demonstrating a lower cost of doing business and develop rules and procedures to properly and deliberately review the required information; alternatively, like the other cigarette wholesalers in the state, McLane may merely wait for the Board to establish these measures.

■ In addition, McLane argues that the preliminary injunction was entered without the benefit of an evidentiary hearing. Again, however, this does not explain why McLane did not pursue the option of becoming involved in the Chicot County Chancery Court case. The preliminary injunction affected all wholesalers — including McLane — who might have wanted to obtain a lower cost of doing business. If McLane suffered prejudice from the chancery court's actions, it could have sought relief by intervening much earlier in that court's proceedings. Instead, McLane deliberately chose other avenues to pursue to protect its interests, at least until July of 1999, when it decided to intervene.

Given the extraordinary delay before McLane filed its motion to intervene, we cannot say that it was an abuse of discretion for the chancellor to deny the motion. For that reason, the chancellor's order is affirmed.