5-3385

385 S. W. 2d 790

Opinion delivered January 18, 1965.

*Gentry & Gentry,* for appellant.

*H. B. Stubblefield,* for appellee.

ED. F. McFADDIN, Associate Justice. This case involves a trusteeship. Mr. Ralph H. Baker, Sr., departed this life in March 1963, and the appellant, Ralph H. Baker, Jr., is the administrator of said estate with will annexed. The present litigation grows out of a real estate transaction wherein Mr. Baker, Sr. acted as trustee for himself and the appellee, Mr. W. W. Leigh; and Mr. Baker, Sr. died without having settled his trusteeship. Mr. Leigh brought this suit, and his difficulty in making proof was because the administrator pleaded the dead man statute,[1] as he had a perfect right to do. Mr. Leigh

---

[1] The "dead man statute" is found in § 2 of the Schedule of the Arkansas Constitution, and reads: "Provided, that in actions by or against executors, administrators, or guardians in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate or ward, unless called to testify thereto by the opposite party. . . ."

was thus unable to testify as to any of his transactions with Mr. Baker; and the evidence in Mr. Leigh's behalf as to such transactions had to be established by written instruments, cancelled checks, bank statements, and the testimony of third persons.

On December 16, 1958, Mr. Baker, as Trustee, paid Messrs. Ellis $4,250.00 for a 6-months option to purchase a tract of 40 acres at a total consideration of $40,000.00. In exercising the option, a fee of $2,000.00 was paid an attorney. The option was exercised, and on June 19, 1959, a deed was executed by Messrs. Ellis to "Ralph H. Baker, Trustee", reciting the total consideration to be $40,000.00, paid and payable as follows:

$11,600.00 in cash;
$12,400.00 vendor's lien notes to Messrs. Ellis;
$16,000.00 Hoffman lien notes assumed by Baker, Trustee.

On June 22, 1959, Ralph H. Baker, Sr. signed and delivered to W. W. Leigh an instrument reading as follows:

## DECLARATION OF TRUST

"STATE OF ARKANSAS ⎱ ss
COUNTY OF PULASKI ⎰

"Whereas Ralph H. Baker, Trustee, has this the 22 day of June 1959 purchased:

"The Northwest Quarter of the Southeast Quarter (NW ¼ SE ¼) Section Three (3), Township One North (Twp. 1 N.), Range Thirteen West (R 13 W), in Pulaski County, Arkansas

for the account of the following persons, and in the proportion set opposite their respective names, to-wit:

"William W. Leigh, Fifty per cent (50%)

"Ralph H. Baker, Fifty per cent (50%) and upon the following terms of purchase: ...................: .................. cash, balance over a period of ............... years, amortized at ............................ and balance bearing interest at .................%.

"Now be it known that Ralph H. Baker, Trustee, acknowledges that he holds the title to said lands for the use and benefit of the persons named, but upon the following terms and conditions, to-wit:

"As this land is purchased on terms, the above parties shall pay their respective portions of the balance due thereon.

"It is specifically understood between all the parties hereto, that all of the interested parties shall promptly pay to the Trustee their proportionate part of all State and County taxes, and any special taxes, levied against said lands.

"Trustee, Ralph H. Baker, covenants to exercise such trust in good faith on his part.

"Witness my hand and seal at Little Rock, County of Pulaski, State of Arkansas this the ............... day of June, 1959.

"/s/ Ralph H. Baker
Ralph H. Baker, Trustee
"/s/ Ralph H. Baker, Jr., Witness."

In September 1963 Mr. Leigh filed the present suit.[2] He alleged the trusteeship of Mr. Baker Sr., as shown by the above instrument, and claimed that he (Leigh) had paid a total of $48,775.22 on the trust property and that Mr. Baker Sr. had paid only $520.18. On the basis of these figures Mr. Leigh prayed that he have judgment against the estate of Mr. Baker and a lien on the one-half interest of Mr. Baker Sr. in the land for $24,-127.52, being the amount Mr. Leigh had paid for the protection of the interest of Mr. Baker Sr. The answer was a general denial and plea of limitations. Trial in the Chancery Court resulted in a decree for Mr. Leigh for all the prayed relief; and this appeal resulted, in which appellants[2] urge two points:

---

[2] The defendants below and appellants here are Ralph H. Baker, Jr., as administrator with will annexed of the estate of Ralph H. Baker, Sr., Deceased, and also Mrs. Ruth Baker, being the widow of Ralph H. Baker, Sr., Deceased.

"I. The Court erred in awarding judgment against Ralph H. Baker, Jr., Administrator of the Estate of Ralph Baker, Sr., deceased in the amount of $24,127.52, the amount of such judgment should have been $15,259.43.

"II. The Court erred in declaring the fixing any lien on the undivided interest of the estate of Ralph H. Baker, deceased."

I. *Amount Of The Judgment.* This is appellant's first point. In the trial there were introduced Mr. Leigh's cancelled checks, identified by witnesses, as to the amounts[3] paid by him in connection with this land transaction, as follows:

| Item | Date | To Whom Paid | Amount |
|------|------|--------------|--------|
| A. | Jan. 22, 1959 | Ralph H. Baker | $11,061.18 |
| B. | Dec. 5, 1958 | Ralph H. Baker | 250.00 |
| C. | Dec. 5, 1958 | Ralph H. Baker | 6,000.00 |
| D. | Aug. 3, 1959 | W. B. Worthen Co. | 714.65 |
| E. | Aug. 3, 1959 | William W. Leigh | 5,000.00 |
| F. | Feb. 16, 1960 | Worthen Bank & Tr. Co. | 409.79 |
| G. | June 20, 1960 | Ralph H. Baker, Tr. | 6,944.00 |
| H. | Aug. 1, 1960 | Worthen Bank & Tr. Co. | 5,762.50 |
| I. | Sept. 8, 1960 | Ralph H. Baker | 72.44 |
| J. | Oct. 18, 1960 | Ralph H. Baker | 241.50 |
| K. | Apr. 11, 1961 | Ken Schuck | 425.00 |
| L. | June 19, 1961 | T. E. Ellis & Gilbert A. Ellis, Trustees | 6,572.00 |
| M. | Aug. 1, 1961 | Worthen Bank & Tr. Co. | 5,125.00 |
| | | **TOTAL** | **$48,578.06** |

The payment of $520.18 by Mr. Baker, Sr. seems to be undisputed. If we add the amounts shown above alleged to have been paid by Leigh................$48,578.06
to the amount paid by Baker.................................... 520.18
we get a total of................................................... 49,098.24
Mr. Baker's half of that amount as the cost
of the 40 acres would be .................................... 24,549.12
Mr. Baker had paid ............................................. 520.18
so according to the evidence Mr. Leigh had
paid for the account of Mr. Baker.....................$24,028.94

---

[3] The complaint alleged payment of two other checks totalling $197.16, but these checks were not introduced, so we disregard them.

In their first point the appellants claim that Mr. Leigh should have an unsecured judgment for only $15,259.43 instead of the amount rendered by the Court. The appellants reach this figure of $15,259.43 by deducting from the total amount paid by Mr. Leigh the items "A," "B," and "C," and Item "K," as identified and shown in the tabulation of Mr. Leigh's checks above. Appellants claim that the items "A," "B," and "C," should be stricken because it was not until the Declaration of Trust was signed that Mr. Baker became bound to Mr. Leigh to pay half of the cost; and appellants claim that Item "K" should be stricken because it was a surveying item and not within the purview of the Declaration of Trust. We cannot agree with appellants as to Items "A," "B," and "C." There was introduced into evidence another instrument, shown to have been signed by Mr. Baker Sr. and delivered to Mr. Leigh, which recited:

"Dear Bill:

"The attached memorandum will serve as a complete record of this transaction as far as payments are concerned. Of the eight thousand paid down, you put up $6,000.00. As I remember it you gave me a check on L. B. Leigh and Co. for $5,000.00 and another personal check for $1,000.00. I put up the other $2,000.00 completing the down payment.

"You have put up all the rest of the money except I paid the semi-annual interest due on 1st lien 8-1-59 of $262.50. If you will pay the semi-annual interest on this item due 4-1-60 this will even up this item. In addition you paid the accrued interest before that when we closed the deal amounting to $533.34. Don't forget to charge this item in your 1959 INCOME TAX REPORT.

"/s/ Ralph

"P.S. You actually advanced $12,133.34 on 6/19/59 broken down as follows:

"Payment                    $11,600.00
Interest                         533.34
                          _____
                            $12,133.34"

There was also introduced the closing figures when Mr. Baker Sr., Trustee, closed the transaction with Messrs. Ellis at the Beach Abstract Company. From these, and from other proof in the case, it is thus clear that Mr. Leigh has paid far more than the amount which he was to pay; that is, his half of the purchase price and interest. Because of failure to introduce some checks, we find that the proof on this point justifies a judgment for Mr. Leigh for only $24,028.94, as previously explained; so we affirm the judgment in favor of Mr. Leigh for $24,028.94.

II. *The Lien On Baker's Interest In The Land.* This point consumes the larger portion of appellants' brief. They insist that Mr. Leigh cannot acquire a lien on Mr. Baker's interest merely by showing that Mr. Leigh has paid money that Mr. Baker should have paid, and they undertake to show that Mr. Leigh cannot obtain a lien by subrogation, equitable lien, or resulting trust. We agree with appellants that the mere payment by Mr. Leigh of more than his half of the cost did not, standing alone and in the absence of other factors, give Mr. Leigh a lien on Mr. Baker's half interest in the land. The case of *Dowdy* v. *Blake,* 50 Ark. 205, 6 S. W. 897, is on this point. But there are many other factors in this case and after considering all of these we hold that Mr. Leigh is entitled to a lien on Mr. Baker's interest in the land because of the application of the equitable doctrine of subrogation. In *Southern Cotton Oil Co.* v. *Napoleon Hill Co.,* 108 Ark. 555, 158 S. W. 1082, this Court discussed at some length the equitable doctrine of subrogation, saying:

"The doctrine of subrogation is an equitable one, having for its basis the doing of complete and perfect justice between the parties without regard to form, and its purpose and object is the prevention of injustice. Cyc. also says, 'And generally, where it is equitable that a person, not a mere stranger, intermeddler, or volunteer, furnishing money to pay a debt, should be substituted for or in place of the creditor, such person will be so substituted.' 37 Cyc. 371. . . .''

Quoting from an earlier case, this Court also said as regards subrogation:

. " 'It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice and good conscience demand its application in opposition to the technical rules of law, which liberate securities with the extinguishment of the original debt. This equity arises when one not primarily bound to pay a debt, or remove an incumbrance, nevertheless does so; either from his legal obligation, as in case of a surety, or to protect his own secondary right; or upon the request of the original debtor, and upon the faith that, as against the debtor, the person paying will have the same sureties for reimbursement as the creditor had for payment. And this equity need not rest upon any formal contract or written instrument. Like the vendor's lien for purchase money, it is a creation of a court of equity from the circumstances.' The theory of equitable assignment, as laid down by Pomeroy is: 'In general, when any person having a subsequent interest in the premises, and who is therefore entitled to redeem for the purpose of protecting such interest, and who is not the principal debtor, primarily and absolutely liable for the mortgage debt, pays off the mortgage, he thereby becomes an equitable assignee thereof, and may keep alive and enforce the lien so far as may be necessary in equity for his own benefit; he is subrogated to the rights of the mortgagee to the extent necessary for his own equitable protection. The doctrine is also justly extended, by analogy, to one who, having no previous interest, and being under no obligation, pays off the mortgage, or advances money for its payment, at the instance of a debtor party and for his own benefit; such a person is in no true sense a mere stranger and volunteer.' Pomeroy, Equity Juris., vol. 3, § 1212."

Subsequent cases have applied this doctrine of subrogation in a variety of circumstances. In *Cowling* v. *Britt,* 114 Ark. 175, 169 S. W. 783, Justice Hart said: "Subrogation is a doctrine of purely equitable origin, and in its operation is always controlled by equitable

principles." In *Federal Land Bank* v. *Richland,* 180 Ark. 442, 21 S. W. 2d 954, Justice Butler said:

"But, as the doctrine of subrogation was evolved by courts of equity for the prevention of injustice, it is administered not as a legal right, but the principle is applied to subserve the ends of justice, and to do equity in the particular case before the court. Therefore no rule can be laid down for its universal application, and whether it is applicable or not depends upon the particular facts and circumstances of each case as it arises, and is subject to that most ancient maxim, 'he who seeks equity must do equity.' "
In *Commonwealth* v. *Martin,* 185 Ark. 858, 49 S. W. 2d 1046, Justice Butler said:

"In many cases it has been our policy to apply the doctrine of subrogation, where by so doing the ends of justice will be met (*Chaffee* v. *Oliver,* 39 Ark. 531; *Cohn* v. *Hoffman,* 45 Ark. 376; *Neff* v. *Elder,* 84 Ark. 277, 105 S. W. 260, 120 Am. St. Rep. 67; *Beauchamp* v. *Bertig,* 90 Ark. 351, 119 S. W. 75, 23 L. R. A. (N. S.) 659; *Southern Cotton Oil Co.* v. *Napoleon Hill Cotton Co.,* 108 Ark. 555, 158 S. W. 1082, 46 L. R. A. (N. S.) 1019) ; . . ."
See also *Webster* v. *Horton,* 188 Ark. 610, 67 S. W. 2d 200; and *Cooper* v. *Home Owners Loan Corp.,* 197 Ark. 839, 126 S. W. 2d 112.

Text writers and cases from other jurisdictions also show the force of this equitable doctrine of subrogation. In 50 Am. Jur. p. 692 *et seq.,* "Subrogation" § 14 *et seq.,* the following appears:

"§ 14. Maxims Applicable.—The various maxims of equity, elsewhere considered, are brought into play when subrogation is sought. It frequently calls for an application of the maxim that 'no one shall be enriched by another's loss.' . . .

"§ 15. Favored Doctrine.—As observed above, the doctrine of subrogation, which in its beginning was somewhat strictly and narrowly applied, was later liberalized and expanded and came to be recognized as a wholesome

and highly meritorious doctrine. Being founded on principles of natural reason and justice and being one of the benevolences of the law, it is a highly favored doctrine and one which has been most liberally dealt with in the courts. Perhaps no doctrine of equity jurisprudence is more beneficent in its operation, and perhaps none stands in higher favor.''

As to some of the persons entitled to subrogation the same volume of Am. Jur. states on pages 695 and 696:

''Recognized inclusions are of those who, like sureties or guarantors, pay the debt to another in the performance of a legal duty imposed by contract or rules of law; those who pay the obligations of another for the purpose of protecting their own rights or interests, including supposed interests; those who pay the debt of another under an agreement for subrogation to the right of the creditor; those who pay on the invitation of the public and whose payment is favored by public policy; and persons whose funds or property have been misapplied by an agent or other fiduciary, or have otherwise been used in such a way as to enrich others unjustly.'' And on page 739 of the same volume of Am. Jur. there is this statement:

''One whose money has been wrongfully or fraudulently used by another in the purchase of real property may work out a remedy by subrogation to the lien of the vendor. Thus, subrogation to a vendor's lien has been allowed where a trust fund in the hands of a vendee of land is used to pay the purchase price or to discharge the lien on the lands under such circumstances as to amount to a fraud on the beneficiary.''

In 83 C. J. S. p. 604, ''Subrogation'' § 9, the text reads:

''Payment to protect own rights and interests. Subrogation will arise in favor of those who act under the necessity of self-protection. One who pays another's debt to protect his own rights and interests, or who pays an-

other's debt in order to protect some interest which he represents, is not ordinarily considered a volunteer and may be subrogated to the creditor's rights. Likewise, one who has an interest which is jeopardized by the continued existence of the debt of another is not a volunteer in paying that debt, and he may obtain subrogation." And on page 630 of the same volume of C. J. S. the text reads:

"Where one having an interest in property pays off an encumbrance on the property in order to protect his interest, he is ordinarily entitled to be subrogated to the rights and remedies of the person paid."

As to the right of a cestui to be subrogated to the interest of the trustee, the American Law Institute's Restatement of the Law of Trusts, Second Edition, p. 448, § 202, says:

"Discharging trustee's individual obligation. Where the trustee wrongfully uses trust funds in discharging an obligation owed by the trustee individually to a third person, the beneficiary is entitled to be subrogated to the rights which the obligee had before the obligation was discharged. A court of equity will afford relief to the beneficiary by putting him in the position occupied by the obligee before the obligation was discharged. If the obligation was a secured obligation, the beneficiary is entitled to the security interest held by the obligee. If the obligation was of such a character that the obligee was entitled to priority over other creditors of the trustee, the beneficiary is entitled to a similar priority."

With the equitable doctrine of subrogation thus understood, we revert to the tabulation of Items "A" to "M", inclusive, as found in Topic I of this Opinion. It was shown that all of the items in the tabulation except Items "A," "B," "C," and "K," were amounts advanced by Mr. Leigh to pay the principal and interest of the vendor's lien notes to Messrs. Ellis ($12,400.00) and the Hoffman lien notes ($16,000.00). As to payment by Mr. Leigh of these items (totalling $28,400.00, plus interest) there can be no doubt of Mr. Leigh's right of

subrogation and a lien against Mr. Baker's interest in the land for the amount that Mr. Leigh paid to protect Mr. Baker's interest. "Where one having an interest in property pays off an encumbrance on the property in order to protect his interest, he is ordinarily entitled to be subrogated to the rights and remedies of the person paid." (See C. J. S. above cited.)

Items "A," "B," and "C," of the said tabulation (in Point I of this Opinion) relate to the amount paid by Mr. Leigh shortly after the exercise of the option by Mr. Baker. These items total $17,311.18 paid to Mr. Baker as the down payment to Ellis and the expenses incident to the sale. Appellants claim that Mr. Leigh is only an unsecured creditor against Mr. Baker's estate for Mr. Baker's half interest of this $17,311.19. We disagree with appellants in this contention. The declaration of trust was dated June 22, 1959; and the undated memorandum (written soometime after August 1, 1959) signed by Mr. Baker[4] says: "You actually advanced $12,133.34 on June 19, 1959." Thus, Mr. Baker admitted that the advance was used to pay for the trust property. Mr. Leigh thus made the advance to Mr. Baker, as Trustee, in order to protect Mr. Leigh's own rights; and there is ample authority that one who pays money to protect his own rights is not a volunteer, and is entitled to subrogation in a case like this. As to Item "K" (a payment to Ken Schuck of $425.00 on April 11, 1961), the proof is rather inconclusive, and we prefer to omit this item from the rule of subrogation.

Reverting again to the tabulation of Items "A" to "M" inclusive, as found in Topic I, when we exclude Item "K" ($425.00), there is left a total of $48,153.06 definitely established to have been paid by Mr. Leigh on the trust property. Mr. Baker paid $520.18, making a total of $48,773.23 paid by both. One half of said total would be $24,386.62 which Mr. Baker should have paid. Since he only paid $520.18, it follows that Mr. Leigh is entitled to a lien against Mr. Baker's interest in the

---

[4] This is previously copied in Topic I of this Opinion.

property for $23,866.44, being the amount of Mr. Leigh's overpayment.

The decree of the Chancery Court is affirmed as to Leigh being entitled to a judgment and a lien on Baker's interest in the property; but the decree is modified as to the amounts; the amount of Leigh's judgment being $24,028.94 and the amount of Leigh's lien on Baker's interest in the land being $23,866.44; both amounts to bear interest from the date as stated in the Chancery decree. As so modified, the cause is remanded for further proceedings not inconsistent with this Opinion. All costs of all courts are to be paid by appellants.