Nan BLACKFORD and Peoples Bank & Trust Co. *v.* Boyd J. DICKEY, Mary Ann Dickey Kimbrough, et al.

90-113                                                   789 S.W.2d 445

Supreme Court of Arkansas
Opinion delivered May 14, 1990
[Rehearing denied June 4, 1990.]

*Young & Finley*, by: *James K. Young*, for appellant Nan Blackford.

*Laws, Swain & Murdoch, P.A.*, by: *Timothy W. Murdoch*, for appellants Peoples Bank & Trust Company.

*Mobley & Smith*, by: *William F. Smith*, for appellees G. Ray Baker and Glenna Baker.

*Gardner & Hardin*, by: *Robert W. Hardin*, for appellee First

National Bank of Russellville.

ROBERT H. DUDLEY, Justice. This case involves the priority of claims and a homestead exemption. The Chancellor held that the appellees' claims come first. We reverse because the appellants' claims are prior.

Appellee Ray Baker built a house on the property at issue in Pope County. He and his wife, Glenna, subsequently conveyed the property to their daughter and son-in-law, appellees Mary Ann and Boyd Dickey. To finance the purchase of the property, Mary Ann and Boyd borrowed $60,000 from Arkansas Valley Bank and secured the loan with a mortgage on the property, the first mortgage. They then paid the Bakers $47,000 for the home. The note and first mortgage were subsequently assigned to Alliance Mortgage Company. A note and second mortgage were subsequently given by Boyd and Mary Ann to the Arkansas Valley Bank to secure an indebtedness arising from Boyd's used car business.

On August 26, 1987, Mary Ann filed for divorce and was temporarily awarded exclusive use of the property. Boyd Dickey testified that he left the property soon thereafter and never planned to return, thereby abandoning his homestead interest in the property. On September 1, 1987, appellant Nan Blackford obtained a judgment against Boyd in Pope County.

During this period, Mary Ann and the Bakers discussed the indebtedness. Boyd and Mary Ann agreed to sign the property over to the Bakers to let them try to salvage it. At the time, Alliance Mortgage Company was about to foreclose because of overdue payments on its note. The Bakers sent Alliance a check for $2,535.52 to hold off any foreclosure action until they could get title to the property.

The Bakers then negotiated with officers of the Arkansas Valley Bank and were successful in getting them to enter into a Mutual Release Agreement dated November 15, 1987, by which the Bakers paid $10,000.00, and Mary Ann was released from her obligation on the business note and the second mortgage which secured it. Boyd executed a new note for the remainder of that debt.

On November 16, 1987, Boyd, who was still married to

Mary Ann, executed a quitclaim deed conveying the property in question to the Bakers. On November 23, 1987, Mary Ann also executed a quitclaim deed conveying the same property to the Bakers. Neither joined in the other's deed. On December 29, 1987, appellant People's Bank & Trust Company was awarded a judgment against Boyd Dickey in Pope County.

The Dickeys' divorce decree was filed December 31, 1987. No homestead rights were reserved in the divorce decree; it simply provided "that all property rights arising between the parties have been fully disposed of . . . ."

On February 10, 1988, the Bakers borrowed $55,000 from appellee First National Bank of Russellville. The Bakers used that money to pay off the first mortgage at Alliance Mortgage Company.

Mary Ann subsequently married Jeff Kimbrough. On December 2, 1988, Boyd Dickey, Mary Ann Dickey Kimbrough, and Jeff Kimbrough executed an instrument which they styled "Correction Quitclaim Deed" in which the same property was again conveyed to the Bakers.

Appellants first contend that the chancellor erred in holding that Boyd Dickey conveyed title free of any judgment liens. The argument is well taken.

The sale of a homestead can convey title free of a judgment lien in existence at the time of the sale. *Arkansas Sav. & Loan Ass'n* v. *Hayes*, 276 Ark. 582, 637 S.W.2d 592 (1982). However, Ark. Code Ann. § 18-12-403 (1987) provides:

> *No conveyance*, mortgage, or other instrument *affecting the homestead of any married person shall be of any validity*, except for taxes, laborers' and mechanics' liens, and the purchase money, *unless his or her spouse joins in the execution of the instrument and acknowledges it.*

(Emphasis added.)

The language of this statute could not be clearer. We have long held that deeds made without regard to this statute are void and leave the title as if they had not been made. *Pipkin* v. *Williams*, 57 Ark. 242, 21 S.W. 433 (1893). Consequently, the

quitclaim deeds of November 16, 1987, and November 23, 1987, were void because the spouse did not join in either of them. Further, the deed styled "Correction Deed" of December 2, 1988, could not operate to validate the void deeds. 23 Am. Jur. 2d, *Deeds*, § 333 (1983). Accordingly, title to the property was not actually conveyed until the "Correction Deed" was executed on December 2, 1988. At that time, the Dickeys were divorced and the judgment liens had already attached to Boyd Dickey's one-half interest in the property.

The right to a homestead exemption in property is a personal right which must be exercised by the party who seeks its benefits, *Arkansas Sav. & Loan Ass'n* v. *Hayes*, 276 Ark. 582, 637 S.W.2d 592 (1982); however, if the debtor spouse neglects or refuses to claim the homestead exemption, then the other spouse may do so. *Id.*; Ark. Code Ann. § 16-66-212(c) (1987).

Here, it is clear that Mary Ann guarded Boyd's homestead exemption in the property; however, upon their divorce, Mary Ann and Boyd became tenants in common, each possessing an undivided, one-half interest in the property. *Villanova* v. *Pollock*, 264 Ark. 912, 576 S.W.2d 501 (1979). She could not continue to assert his homestead interest after the divorce unless the right to do so was reserved in the divorce decree. *Elms* v. *Hall*, 214 Ark. 601, 215 S.W.2d 1021 (1948). Their divorce decree did not reserve that right. Consequently, since Mary Ann could no longer assert Boyd's homestead exemption in his portion of the property, and he denied doing so, the judgment liens attached to his half interest and followed the property with the "Correction Deed" conveyance to the Bakers.

The other argument in which we find merit is that application of the doctrine of subrogation was not appropriate because appellees Ray and Glenna Baker were "volunteers" in paying off the first and second mortgages on the property. The doctrine of subrogation is an equitable one which has as its basis the doing of complete and perfect justice between parties. *Baker* v. *Leigh*, 238 Ark. 918, 385 S.W.2d 790 (1965). It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice and good conscience demand its application in opposition to the technical rules of law. *Id.* Subrogation arises when one not primarily bound to pay a debt or remove an

incumbrance nevertheless does so, either from his legal obligation, as in the case of a surety, or to protect his own secondary right. It may also arise upon the request of the original debtor, and upon the faith that, as against the debtor, the person paying will have the same sureties for reimbursement as the creditor had for payment. *Id.* Subrogation will not generally be decreed in favor of a mere volunteer or intermeddler who, without any duty, pays the debt or discharges the obligation of another. *Baker* v. *Leigh, supra*; 73 Am. Jur. 2d, *Subrogation*, § 23 (1974). Generally, the party making payment is a volunteer if, in so doing, he has no right or interest of his own to protect, and acts without obligation, moral or legal, and without being requested by anyone liable on the obligation. 73 Am. Jur. 2d, *Subrogation*, § 24 (1974).

Further, the equities of one seeking subrogation must be superior to those of other claimants. Here, the Bakers, as caring parents, were trying to protect their daughter, Mary Ann. They were not trying to protect Boyd. Any benefit to him was only secondary. This is evidenced by their actions on the second mortgage. The debt on the note secured by the second mortgage amounted to more than $82,000.00. The Bakers paid the holder of the note, Arkansas Valley Bank, $10,000.00 to release Mary Ann from the liability on the note, but, did not attempt to secure Boyd's release. In fact, as part of the agreement, Boyd was required to execute a new note for the difference to the Bank. The Bakers made no effort to satisfy Boyd's judgment creditors whose judgment liens had long been attached. Thus, it cannot be said that the Bakers' equities are greater than those of Boyd's judgment creditors. Appellee First National Bank of Russellville does not demonstrate any equitable reason whatsoever for subrogation.

Reversed and remanded for proceedings consistent with this opinion.