# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3622

_____

Great American Insurance       *
Company; Ohio Casualty Insurance    *
Company, doing business as Ohio     *
Casualty Group,                         *
                                       *
        Plaintiffs-Appellants,       *
                                       *
    v.                                   *
                                       * Appeal from the United States
Dover, Dixon Horne, P.L.L.C;      * District Court for the
                                       * Eastern District of Arkansas.
        Defendant,                *
                                       *
                                       *
M. Darren O'Quinn; David A. Couch;   *
Dover & Dixon, P.A.,            *
                                       *
        Defendants-Appellees.      *

_____

Submitted: June 15, 2006
Filed: July 31, 2006

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

     Great American Insurance Company (Great American) brought this action against M. Darren O'Quinn, David Couch, and their law firm for inadequate

representation of its insured resulting in a multimillion dollar adverse jury verdict. Ohio Casualty Insurance Co. (Ohio Casualty), which had purchased Great American's commercial division in 1998, was added as a plaintiff three weeks after the suit was filed.[1] After the insurers learned that O'Quinn and Couch had worked at the time in question for Dover & Dixon, P.A. rather than Dover, Dixon Horne, P.L.L.C., they substituted it as defendant. The district court[2] granted a defense motion for summary judgment based on the governing Arkansas law. Great American and Ohio Casualty appeal, and we affirm.

Advocat, Inc. (Advocat), owner and operator of the Rich Mountain Nursing and Rehabilitation Center, was sued in Arkansas state court by the estate of Margaretha Sauer which claimed that Advocat's negligent and reckless care had caused her death. Advocat's third party administrator, Caronia Corp. (Caronia), hired Darren O'Quinn and David Couch of the firm Dover & Dixon to defend Advocat in the wrongful death action. On May 23, 2001, Caronia notified the defendants that Ohio Casualty was one of Advocat's excess insurance carriers and requested that O'Quinn contact Ohio Casualty's Vice President & Counsel, Jim Danehy, regarding the lawsuit.

O'Quinn mailed Danehy a copy of the settlement valuation that he had prepared for Advocat 30 days before trial, which was marked "attorney client privilege". O'Quinn's short cover letter stated:

---

[1] We will refer to both entities as "Ohio Casualty" or "the insurers".

[2] The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

Dear Mr. Danehy:

As instructed by Janie Hanna at Caronia Corporation, I am enclosing to you recent correspondence and my pre-trial report in connection with the referenced matter.

If you have any questions, please do not hesitate to contact me.

O'Quinn's valuation of the case estimated a potential verdict of between $400,000 and $600,000 in compensatory damages and $1.8 million in punitive damages. After Danehy had received the materials, he and O'Quinn had a telephone conversation in which counsel repeated his valuation.

On June 11, 2001 the trial in the case against Advocat began with attorneys O'Quinn and Couch defending. Other insurers with coverage exposure engaged separate counsel to monitor the trial and to communicate with the estate regarding a possible settlement. Although Danehy conferred with local counsel regarding the lawsuit, Ohio Casualty did not retain separate counsel to monitor the trial or to negotiate with the estate. On June 22 the jury returned a verdict in favor of the estate in the amount of $78 million, $15 million of which represented compensatory damages with $63 million in punitive damages. The Arkansas Supreme Court remitted the damage awards to $26 million and affirmed the judgment. This left Ohio Casualty facing potential liability for approximately $10 million of the award.

This case was filed in June 2004, alleging that the defendants had violated various codes of professional conduct during their representation of Advocat, failed to communicate settlement offers, and provided inadequate representation during the trial. The defendants filed a motion for summary judgment, arguing that the lawsuit was barred by § 16-22-310 of the Arkansas Code. The insurers responded that the statute was inapplicable and alternatively that they should be permitted to proceed on an equitable subrogation theory. The district court ruled that Arkansas Code § 16-22-310 bars malpractice suits by parties without a privity relationship with attorneys

unless a statutory exception applies, that the insurers did not have privity with the defendants or fit one of the statutory exceptions, and that they could not proceed based on equitable subrogation principles in contravention of § 16-22-310.

The insurers appeal, arguing that § 16-22-310 is inapplicable to this case and in the alternative that they should be permitted to proceed based on equitable subrogation principles. Appellees respond that the Arkansas legislature eliminated legal malpractice lawsuits by third parties except in limited circumstances, that this cause of action does not fit into one of the statutory exceptions, and that application of equitable subrogation would directly contravene the public policy expressed in § 16-22-310. We review the district court's grant of summary judgment de novo. Lund v. Hennepin Cty, 427 F.3d 1123, 1125 (8th Cir. 2005).

Section 16-22-310 of the Arkansas Code permits only those in direct privity with attorneys to file legal malpractice actions, but the statute has carved out two narrow exceptions to the direct privity requirement. Ark. Code § 16-22-310.[3] Parties

_____

[3]The entire text of this section of the Arkansas Code reads as follows:

16-22-310. Liability for civil damages.
(a) No person licensed to practice law in Arkansas and no partnership or corporation of Arkansas licensed attorneys or any of its employees, partners, members, officers, or shareholders shall be liable to persons not in privity of contract with the person, partnership, or corporation for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by the person, partnership, or corporation, except for:
(1) Acts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations; or

(2)(A) Other acts, omissions, decisions, or conduct if the person, partnership, or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action.

-4-

lacking "privity of contract" can still pursue claims if an attorney committed "fraud or intentional" misconduct, id. at (a)(1), or if the plaintiff is a third party beneficiary of an attorney's services. Id. at (a)(2)(A). The third party beneficiary exception only applies if an attorney has identified in writing, to the client and to the third party, that the party bringing the suit was entitled to rely on his or her professional services. Id. at (a)(2)(B); McDonald v. Pettus, 988 S.W.2d 9, 14 (Ark. 1999).

The insurance providers assert that this cause of action comes within the third party beneficiary exception, relying on the May 23 mailing from O'Quinn to Danehy as proof. The May 23 letter and pretrial report only informed Ohio Casualty of counsel's settlement valuations, however. Nowhere in the mailing did O'Quinn identify Ohio Casualty as a party who was intended to rely on the valuations. See Jackson v. Ivory, 120 S.W.3d 587, 594-95 (Ark. 2003). In addition, Ohio Casualty sought the advice of another attorney prior to trial and admitted during discovery that it lacked an attorney client relationship with the defendants. The record does not show that the defendants and Advocat intended for Ohio Casualty to rely on the defendants' services. We conclude that the district court did not err by concluding that the insurers are unable to bring this cause of action under the third party beneficiary exception to § 16-22-310.

The insurers also argue that principles of equitable subrogation should allow them to recover. Equitable subrogation is a remedy resting on principles of unjust

---

(B) For the purposes of subdivision (a)(2)(A) of this section, if the person, partnership, or corporation identifies in writing to the client those persons who are intended to rely on the services, and sends a copy of the writing or similar statement to those persons identified in the writing or statement, then the person, partnership, or corporation or any of its employees, partners, members, officers, or shareholders may be held liable only to the persons intended to so rely, in addition to those persons in privity of contract with the person, partnership, or corporation.

enrichment that attempts to accomplish justice between the parties. <u>Blackford v. Dickey</u>, 789 S.W.2d 445, 447 (Ark. 1990). It includes "every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which that other person should have paid." <u>St. Paul Fire & Marine v. Murray Guard</u>, 37 S.W.3d 180, 183 (Ark. 2001). The insurers maintain that they should be able to proceed based on equitable principles to ensure that the defendants will be held accountable for having provided inadequate legal services.

Arkansas Code § 16-22-310 "enunciates the parameters for litigation by clients against attorneys". <u>Clark v. Ridgeway</u>, 914 S.W.2d 745, 750 (Ark. 1996). Permitting the insurers to proceed against the defendants would directly contravene the language of § 16-22-310 and the public policy considerations underlying it. <u>See</u> <u>Swiss Reinsurance America Corp., Inc. v. Roetzel & Andress</u>, 837 N.E.2d 1215, 1224 (Ohio App. 2005). Given that the public policy of Arkansas is to shield attorneys from malpractice suits brought by parties lacking privity with them, that the insurance companies lacked privity with the defendants, and the appellants do not qualify for one of the two exceptions to the privity requirement, we conclude that the district court did not err by awarding summary judgment to the defendants.

Accordingly, we affirm the judgment of the district court.

_____