375 Ark. 428

ARKANSAS ANNUAL CONFERENCE OF the AME CHURCH, INC. and African Methodist Episcopal Church, Inc., Appellants,

v.

NEW DIRECTION PRAISE AND WORSHIP CENTER, INC., Daryl Bailey, Lloyd Worthy, and Vivian Nooner, Appellees.

No. 08–167.

Supreme Court of Arkansas.

Jan. 30, 2009.

David O. Bowden and Mercer Law Firm, by: Christopher C. Mercer, Jr., Little Rock, for appellants.

Lax, Vaughan, Fortson, McKenzie & Rowe, P.A., by: Roger D. Rowe and Jennie L. Clingan, Little Rock, for appellee.

JIM HANNAH, Chief Justice.

This appeal involves a dispute over the ownership of church property located at 2311 Bailey Road, in Little Rock. Appellants Arkansas Annual Conference of the African Methodist Episcopal Church, Inc. (Arkansas AME) and African Methodist Episcopal Church, Inc. (National AME), collectively referred to as AME, appeal the judgment of the Pulaski County Circuit Court granting a petition to quiet title in appellee New Direction Praise and Worship Center (New Direction) and ordering the return of personal property, including a 1999 Dodge van. AME also appeals the circuit court's denial of its motion for supersedeas bond. We affirm the circuit court.

The real property that is the subject of this dispute is described as follows:

Starting at the existing NW corner of the NE 1/4 of the NW 1/4, Section 21, Township 1 South, Range 12 West, Pulaski County, Arkansas, and run thence East 158.7 feet to the point of beginning; from the point thus established run thence South 208.7 feet; thence East 158.7 feet; thence North 208.7 feet; thence West 158.7 feet to the point of beginning, containing 3/4 acres, more or less.

On December 27, 1969, Will Bailey, the owner of the real property, contracted to sell the real property to the Sand Hill AME Church (Sand Hill) for the price of $750, of which $500 was paid at the time of the contract of sale and $250 was payable in three years. On July 15, 1971, Geraldine Jones, as the administratrix of the Estate of Will Bailey, Deceased, conveyed by deed the real property to "George Bailey, Fred Jones, and Harris Bailey as Trustees of the Sand Hill AME Church, and to their successors in office."

In 1971, the membership of Sand Hill consisted of members of the Bailey family. Will Bailey was the uncle of Geraldine Jones, the administratrix of his estate. Two of the trustees named as grantees in the administratrix deed, George Bailey and Harris Bailey, were nephews of Will Bailey and brothers of Geraldine Jones. The remaining trustee named as grantee in the administratrix deed, Fred Jones, was the husband of Geraldine Jones.

Between 1971 and 1981, the members of Sand Hill saved to build a meeting house on the real property. Through the volunteer labor of relatives of the Bailey family, a concrete block meeting house was constructed in 1981. Vivian Nooner and Brenda Kay Webb, who were members of the congregation between 1971 and 1981, both testified that they could not recall any financial assistance from the Arkansas AME or the National AME for the purchase of the real property or the construction of the meeting house. Revered Eugene Brannon, the presiding elder of the Little Rock District of the AME, testified that he recalled a rally of area congregations of AME churches to raise funds for the purchase of the real property at issue and a second rally for the construction of the meeting house. Reverend Brannon stated that he could not, however, recall the amount of funds raised for the benefit of Sand Hill.

In 1981, the membership of Sand Hill still consisted of members of the Bailey family. According to Nooner, of the trustees of Sand Hill shown on the cornerstone of the meeting house constructed in 1981, all were members of the Bailey family. Nooner stated that of the stewards listed on the cornerstone, all but one, the pastor's wife, were members of the Bailey family.

No testimony or documents were introduced by any party regarding the formation of Sand Hill or its initial connection with the National AME. Nooner testified that, while Sand Hill accepted pastors from Arkansas AME, it did not associate exclusively or even primarily with other AME churches. She stated that many of the churches with which Sand Hill associated were Baptist churches.

Between 1971 and 1995, the membership of Sand Hill numbered approximately ten to twelve members. Beginning in 1995 and continuing until 2004, the presence of a new pastor, Reverend Bowers, significantly increased the membership, and the number of members eventually grew to between fifty and sixty. When Reverend Bowers left Sand Hill in 2004, the membership again decreased to approximately ten to twelve members.

By August 2005, Sand Hill was encountering financial difficulties. AME policy requires AME churches to pay assessments on a quarterly basis, with the amount of assessments based on the number of members. Although its membership had decreased following Reverend Bowers's departure, the Arkansas AME did not reduce Sand Hill's quarterly financial obligations. By August 31, 2005, Sand Hill had only $1.26 left in its bank account.

On October 9, 2005, ten members of Sand Hill met and voted unanimously to disassociate from the AME. Thereafter, the members continued to meet for worship service in the meeting house on the real property. The members also met again to organize a new church and voted unanimously to incorporate a new church. The trustees of the congregation incorporated New Direction Praise and Worship Center, Inc., on November 15, 2005. The members also voted unanimously to deed to New Direction title to the real property and to transfer title in a 1999 Dodge van to New Direction. A quitclaim deed was prepared by the trustees of New Direction on November 17, 2005, and the deed was filed of record on November 18, 2005. The members were unable to find the title to the Dodge van, so title was not then transferred to New Direction.

On November 26, 2005, the members of New Direction invited Reverend Brannon, the presiding elder of the Little Rock District of the AME, to meet with them at the property. They delivered a written notice to Reverend Brannon, informing him that the members of the congregation formerly known as Sand Hill AME Church were no longer affiliated or associated with AME. Reverend Brannon asked for a key to the building, and one of the members gave him a key. Other members retained their keys, but when they later returned to the meeting house, they found that their keys no longer opened the door. Arkansas AME subsequently sent an AME minister in training to conduct services in the meeting house. New Direction then brought a civil action for ejectment, quiet title, and replevin. The circuit court found in New Direction's favor, and AME now brings this appeal.

*Subject–Matter Jurisdiction and the Neutral–Principles Approach*

█ The first issue that must be decided is whether the circuit court had subject-matter jurisdiction to resolve this dispute over church property. AME claims that

the circuit court was without subject-matter jurisdiction because this matter could not be decided by neutral principles of law without resort to interpretation of church religious beliefs, practices, customs, organization, and polity. AME contends that the circuit court's decision is in violation of the Establishment Clause of the United States Constitution, as well as the similar guarantees of article 2, sections 24 and 25 of the Arkansas Constitution. New Direction asserts that the circuit court properly exercised jurisdiction over this dispute about church property because the dispute could be decided by applying neutral principles of law.

Where the existence of subject-matter jurisdiction is a question of constitutional interpretation, the standard of review is de novo. *Viravonga v. Wat Buddha Samakitham,* 372 Ark. 562, 279 S.W.3d 44 (2008); *Weiss v. McLemore,* 371 Ark. 538, 268 S.W.3d 897 (2007). In *Viravonga,* we stated:

> Both the United States Constitution and the Arkansas Constitution prohibit the courts from becoming involved in disputes between members of a religious organization that are "essentially religious in nature," because the resolution of such disputes "is more properly reserved to the church." *Gipson v. Brown,* 295 Ark. 371, 374, 749 S.W.2d 297, 298 (1988).
>
> Nonetheless, "[i]t is unquestionably the duty of the courts to decide legal questions involving the ownership and control of church property." *Holiman v. Dovers,* 236 Ark. 211, 219, 366 S.W.2d 197, 204 (1963) (supplemental opinion denying rehearing). As the United States Supreme Court has noted, "[t]he State has an obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership of church

property can be determined conclusively." *Jones v. Wolf,* 443 U.S. 595, 602, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). Yet, even when a property dispute is involved, courts must refrain from settling the dispute "on the basis of religious doctrine and practice" and instead apply only "neutral principles of law." *Id.* at 602–03, 99 S.Ct. 3020; *see also Ark. Presbytery of Cumberland Presbyterian Church v. Hudson,* 344 Ark. 332, 339, 40 S.W.3d 301, 306 (2001) (expressly adopting the United States Supreme Court's neutral-principles approach); *Gipson,* 295 Ark. at 377, 749 S.W.2d at 300 (applying the neutral-principles-of-law analysis to determine whether there was jurisdiction over an internal church dispute).

. . . .

While "it is impermissible for the civil courts to substitute their own interpretation of the doctrine of a religious organization for the interpretation of the religious organization," *Belin,* 315 Ark. at 67, 864 S.W.2d at 841, a court may nonetheless have to examine documents of a partially religious nature, such as church constitutions, in resolving a property dispute. *Jones,* 443 U.S. at 604, 99 S.Ct. 3020. For example, a court can look at "(1) the language of the deeds; (2) the terms of the local church charters; (3) the state statutes governing the holding of church property; and (4) the provisions in the constitution of the general church concerning the ownership and control of church property" in determining whether a local church or one of its governing bodies holds title to church property. *Hudson,* 344 Ark. at 338, 40 S.W.3d at 306 (citing *Jones,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775). . . .

The United States Supreme Court has acknowledged that applying the neutral-principles approach to an examination of documents relating to a religious institution is not "wholly free of difficulty." *Jones*, 443 U.S. at 604, 99 S.Ct. 3020. In performing its examination, the court must be careful to scrutinize such documents in "purely secular terms," deferring to the religious institution itself for the resolution of doctrinal issues. *Id.;* see *Hudson*, 344 Ark. at 339, 40 S.W.3d at 306–07.

*Viravonga*, 372 Ark. at 568–71, 279 S.W.3d at 50 (footnotes omitted).

■ While it is clear that civil courts have subject-matter jurisdiction to hear cases involving church property disputes, courts must settle the dispute by applying neutral principles of law. We must now determine whether the circuit court did so in this case.

■ The first element of the neutral-principles approach is to review the language of the deed. When we are called upon to construe deeds and other writings, we are concerned primarily with ascertaining the intention of the parties, and such writings will be examined from their four corners for the purpose of ascertaining that intent from the language employed. *Hudson*, supra. In reviewing instruments, our first duty is to give effect to every word, sentence, and provision of a deed where possible to do so. *Id.* We will not resort to rules of construction when a deed is clear and contains no ambiguities, but only when its language is ambiguous, uncertain, or doubtful. *Id.* Here, the language of the deed indicates that the local trustees of Sand Hill hold title to the property. As previously stated, on July 15, 1971, Geraldine Jones, as the administratrix of the Estate of Will Bailey, Deceased, conveyed by deed the real property to "George Bailey, Fred Jones, and Harris Bailey as Trustees of the *Sand Hill AME Church,* and to their successors in office." (Emphasis added.) Nothing in the language of the deed reflects that Sand Hill was held in trust for Arkansas AME or National AME.

As to the second element, the terms of local church charters, AME states that the 1968 edition of *The Doctrine and Discipline of the African Methodist Episcopal Church* (*Book of Discipline*) functions as both its charter and its general church constitution; therefore, our review of the second element will also serve as our review of the fourth element.[1] Section 2 of the *Book of Discipline*, titled General Church Property, provides, in relevant part:

1. For the security of our meeting houses and the premises belonging thereunto, let the following plan of a deed of settlement be brought into effect in all possible cases wherever the law will permit it in a State.

2. If necessary, each Annual Conference may make such modifications in the deed as may be required by the laws of any State, so as to firmly

---

1. The 1968 edition was in effect at the time of the 1971 conveyance to Sand Hill. According to the testimony of Reverend Brannon, National AME's plan of title and governance of property of the local AME congregations was essentially carried forward without change in the editions of the *Book of Discipline* that were published every four years after 1968. At oral argument, counsel for AME stated that, while the 1968 edition of the *Book of Discipline* may have governed the original transaction, the *Book of Discipline* was later amended to include a provision stating that all local church property would be held in trust for the National AME. Counsel asserted that the members of Sand Hill "consented to the amendment" by their silence. Nevertheless, counsel conceded that AME did not make this argument before the circuit court.

secure the premises to the African Methodist Episcopal Church.

3. No personal or real property whatsoever of the A.M.E. Church in any foreign district or parts thereof shall be purchased, disposed of, sold, or otherwise encumbered except by the written consent of the presiding bishop and trustees elected by the Annual Conference in which the property is located.

4. The incorporation of all our churches, where the law will permit it, should be attended to as soon as possible. And in every corporation of the A.M.E. Church the pastor shall be president of the corporation and of the board of trustees, and the method of electing trustees shall be the same as prescribed in the Book of Discipline. Every pastor shall see that the provision is a part of the articles of incorporation.

Also included in Section 2 is a form for a trust deed for local church property that provided the property was to be held in trust for the use of the members of the National AME under the rules of the *Book of Discipline*. In addition, the form for a trust deed provided:

Whereas some of the states and territories (and countries) have special acts on their statue [sic] book governing religious bodies, therefore the meaning and intent of this chapter wherever it refers to the law of the State or Territory is to be subject to the said state law and not to any individual church corporation that is now or may be incorporated.

The record reveals that Sand Hill was not incorporated. National AME did not introduce any evidence that it was involved in the purchase of the property. Arkansas AME did not introduce any evidence that it approved Sand Hill's purchase of the real property in 1969, at the time of the contract of sale, or in 1971, at the time of the delivery of the administratrix deed. In addition, the administratrix deed did not follow the form of the trust deed included in the *Book of Discipline*.

We next consider the third element, Arkansas statutes governing the holding of church property. Arkansas Code Annotated section 18–11–201 (Repl.2003) provides:

All lands and tenements, not exceeding forty (40) acres, that have been, or hereafter may be, conveyed by purchase to any person as trustee in trust for the use of any religious society within this state, either for a meeting house, burying ground, campground, or residence for their preacher, shall descend with the improvements and appurtenances in perpetual succession in trust to the trustee or trustees as shall, from time to time, be elected or appointed by any religious society, according to the rules and regulations of the society.

Likewise, Arkansas Code Annotated section 18–11–202 (Repl.2003) provides:

The trustee or trustees of any religious society shall have the same power to defend and prosecute suits at law or in equity and do all other acts for the protection, improvement, and preservation of trust property as individuals may do in relation to their individual property.

New Direction points to statutory law regarding trusts. Pursuant to Arkansas Code Annotated section 28–73–402(a) (Supp.2007), a trust is created only if:

(1) the settlor has capacity to create a trust;

(2) the settlor indicates an intention to create the trust;

(3) the trust has a definite beneficiary or is:

(A) a charitable trust;

(B) a trust for the care of an animal, as provided in § 28–73–408; or

(C) a trust for a noncharitable purpose, as provided in § 28–73–409;

(4) the trustee has duties to perform; and

(5) the same person is not the sole trustee and sole beneficiary.

The language of the 1971 deed indicates that Will Bailey intended to create a trust for *Sand Hill AME Church,* see Arkansas Code Annotated section 28–73–402(a), which he was authorized to do pursuant to Arkansas Code Annotated section 18–11–201 (Repl.2003). Nothing in the language of the deed suggests that Will Bailey had the intention of creating a trust in favor of either the National AME or the Arkansas AME. Neither the National AME nor the Arkansas AME had an ownership interest in the property at the time of the conveyance, and neither was a party to the transaction.

Based upon the application of our neutral-principles approach and based upon our de novo review of the language of the 1971 deed, the provisions in the *Book of Discipline,* and Arkansas statutory law governing property and trusts, we hold that the circuit court did not err in quieting title in favor of New Direction, ordering AME's ejectment, and concluding that New Direction was entitled to replevin of the personal property located on the real property and the 1999 Dodge van.

### Validity of the 2005 Deed

■■■ AME next contends that, even assuming that the trustees of Sand Hill had the authority to convey the property to New Direction, the conveyance must fail because the deed was invalid. The circuit court concluded, and we agree, that AME had no right, title, or interest in the real property at issue. Accordingly, AME lacks standing to challenge the November 2005 conveyance of the property to New Direction. As such, we do not address AME's arguments on this point.

### Supersedeas Bond

■■■ AME contends that the circuit court erred in denying AME's posttrial motion for setting of a supersedeas bond to stay proceeding pending appeal. Because we affirm the circuit court's judgment in favor of New Direction, AME's argument regarding the setting of a supersedeas bond is moot.

### Motions for Award of Costs and Attorneys' Fees on Appeal

■■■ New Direction filed a Motion for Award of Costs and Attorneys' Fees Incurred By Reason of Appellants' Insufficient Abstract and Addendum. AME filed a response and, additionally, it filed a Motion for Award of Costs and Attorneys' Fees Incurred by Reason of Appellee's Insufficient Abstract and Addendum. Pursuant to Arkansas Supreme Court Rule 4–2(b)(1) (2008), "[w]hen the case is considered on its merits, the Court may upon motion impose or withhold costs, including attorney fees, to compensate either party for the other party's noncompliance with this Rule." After considering the merits of this case, we do not believe that either of the parties' abstracts and addendums are insufficient to the extent that costs should be imposed by this court. Accordingly, we deny both motions.

Affirmed.