2009 Ark. App. 290
**Jimmy FROST, Appellant,**

v.

**Vanessa FROST, Appellee.**

**No. CA 08–919.**

Court of Appeals of Arkansas.

April 15, 2009.

John F. Gibson, Jr., Monticello, for appellant.

Law Offices of Sara M. Hartness, by: Sara M. Hartness, Monticello, for appellee.

COURTNEY HUDSON HENRY, Judge.

The Drew County Circuit Court granted appellee Vanessa Frost a divorce from appellant Jimmy Frost on the ground of general indignities. For reversal, appellant contends that the trial court erred by denying his motion for a continuance and by unequally dividing their marital property. We affirm.

After thirty years of marriage, appellee filed a complaint for divorce in September 2007. Appellant answered the complaint, and the trial court scheduled the final divorce hearing for April 14, 2008. At the time of the hearing, appellant was an inmate at the Grimes Unit of the Arkansas Department of Correction. Therefore, the trial court issued a delivery order to secure appellant's presence at the hearing.

When the hearing convened, appellant was not in attendance, and his counsel moved for a continuance so that appellant could be heard on the issue of property division and his request for spousal support. Before ruling on the continuance motion, the trial court elicited the testimony of the court's bailiff, Deputy Raymond Chism of the Drew County Sheriff's Department. According to Deputy Chism, he drove to the prison that morning for the purpose of transporting appellant to court. When Chism met appellant in an office,

appellant shouted obscenities at Chism and physically attacked him. The assault prompted an alert "code" within the prison, and a guard had to subdue appellant. Because of appellant's actions, the warden refused to release appellant from the prison to attend the hearing. In light of Chism's testimony, the trial court denied appellant's motion for a continuance, ruling that "this could go on forever" and that appellant had only himself to blame for not being present at the hearing. The trial court then proceeded with the hearing.

Appellee testified that both she and appellant maintained employment during the marriage. She acknowledged that appellant had a heart condition for which he took medication, but she said that appellant's doctor had never advised him not to work. Appellee testified, however, that she was no longer capable of working. Appellee explained that, a month after she filed for divorce, she encountered appellant at their home and that he tried to persuade her to reconcile with him. When appellee declined, appellant brandished a gun and declared that he "was going to have to do what I told you I would always do if you left me." Appellant then shot appellee four times at close range as she sat in her vehicle. One of the gunshots struck appellee in the head. Appellee said that her memory was impaired as a result of the wound to her head and that, as a consequence, she lost her job as a caregiver. Appellee testified that appellant was facing a charge of attempted murder for shooting her.

Appellee also disclosed that appellant had previously been placed on probation for terroristic threatening based upon an incident during which he pointed a gun to her face. She said that appellant's current incarceration was the result of a probation violation stemming from an incident in which appellant stabbed her and a male friend with a knife.

In terms of property, appellee testified that she and appellant owned furnishings and the marital home, which they purchased from her family. She also owned a newly purchased vehicle. Appellee stated that they owned a tractor that appellant recently transferred to their son and that their son also had title to the car that appellant drove before his incarceration. Appellee further testified that appellant "burned down" two of their houses and destroyed everything in their house on another occasion. She asked to be awarded the marital home, the furnishings, and her vehicle because "I'm tired of building up and getting it taken away."

Amy Frost, the parties' daughter, also testified at the hearing. In addition to corroborating appellee's residence in Arkansas and the grounds for divorce, she stated that her father typically destroyed the property her parents accumulated and that her father had twice set fire to their house. Amy testified that her mother suffered physical problems after the shooting and said that her mother's memory was seriously affected by the gunshot wound to the head. She felt that her mother was not able to work as a result of the injuries she sustained in the shooting incident.

In dividing the marital property, the trial court found that appellee was not capable of working or supporting herself due to appellant's violent attack. The trial court awarded appellee as her sole and separate property the marital home, the furnishings, and all other personal property in her possession. Although the attorneys agreed at the hearing that appellant had executed a warranty deed purporting to convey his interest in the marital home to the parties' son, the court expressed no opinion concerning the validity of the deed because the son was not a party to the

divorce. The court did, however, direct the divorce decree awarding the property to appellee to be filed in the real-property title books of Drew County.

Appellant's first argument concerns the denial of his motion for a continuance. Rule 40(b) of the Arkansas Rules of Civil Procedure provides that the court may, upon motion and for good cause shown, continue any case previously set for trial. The granting or denial of a motion for a continuance is a matter within the discretion of the trial court. *Dorothy v. Dorothy*, 88 Ark.App. 358, 199 S.W.3d 107 (2004). The court's decision on a continuance will not be reversed absent an abuse of discretion amounting to a denial of justice. *Looney v. Raby*, 100 Ark.App. 326, 268 S.W.3d 345 (2007). A trial court has an obligation to manage and control its docket in an efficient manner. *Odaware v. Robertson Aerial–AG, Inc.*, 13 Ark.App. 285, 683 S.W.2d 624 (1985). We also recognize that it is crucial to our judicial system that trial courts retain the discretion to control their dockets. *Nat'l Front Page, LLC v. State ex rel. Pryor*, 350 Ark. 286, 86 S.W.3d 848 (2002).

In this case, the trial court took the steps necessary to ensure appellant's attendance at the hearing by issuing the delivery order and by arranging for appellant's transportation to the hearing. However, appellant's absence at the hearing was directly attributable to his own misconduct and connivance. We observe that the attack on Deputy Chism was unprovoked, and it is plausible that appellant's antics could be construed as a misguided ploy designed to delay the proceedings. Given these circumstances, we find no abuse of discretion in the trial court's denial of the motion for a continuance.

Appellant's next issue concerns the unequal division of marital property. Appellant argues that it was not proper for the trial court to consider that he was the cause of appellee's disability in making an unequal division of the marital property, because fault is not among the statutory factors listed in Arkansas Code Annotated section 9–12–315(a)(1)(A) (Repl.2008).

Insofar as the marital home is concerned, the record reflects that appellant endeavored to divest himself of any interest in this property when he executed a deed to his son. A party has no standing to raise an issue regarding property in which he has no interest. *Nash v. Estate of Swaffar*, 336 Ark. 235, 983 S.W.2d 942 (1999); *see also Arkansas Annual Conference of the AME Church, Inc. v. New Direction Praise and Worship Ctr., Inc.*, 375 Ark. 428, 291 S.W.3d 562 (2009). The trial court made no determination as to the validity of the deed, and neither do we in the absence of a ruling made by the trial court. However, for purposes of this appeal, we must conclude that appellant is in no position to complain about the trial court's disposition regarding the marital home because of the purported conveyance of his interest in the property. Therefore, we affirm the trial court's ruling as to the real property.

With respect to the furnishings and other items of personal property, Arkansas Code Annotated section 9–12–315(a)(1)(A) commands that all marital property is to be distributed one-half to each party unless the court finds such a division to be inequitable, after taking into consideration a number of factors, including: the length of the marriage; the age, health, and station in life of the parties; the occupation of the parties; the amount and sources of income; vocational skills; employability; estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; contribution of each party in acquisition, preser-

vation or appreciation of marital property, including services as a homemaker; and federal income tax consequences of the court's division of property. The specific enumeration of these factors within the statute does not preclude a trial court from considering other relevant factors, where excluding other factors would lead to absurd results or deny the intent of the legislature to allow for the equitable division of property. *Hernandez v. Hernandez*, 371 Ark. 323, 265 S.W.3d 746 (2007).

The application of these factors is a factual determination; therefore, this court will not reverse the division of marital property unless that division is clearly erroneous or clearly against the preponderance of the evidence. *Singleton v. Singleton*, 99 Ark.App. 371, 260 S.W.3d 756 (2007). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Farrell v. Farrell*, 365 Ark. 465, 231 S.W.3d 619 (2006).

In *Keathley v. Keathley*, 76 Ark.App. 150, 61 S.W.3d 219 (2001), we recognized that section 9–12–315 allows a trial court to make an unequal distribution of marital property and that, in some cases, that decision will necessarily be based on a party's actions or the failure to act, which in a literal sense, could be considered fault. There, we affirmed an unequal division of marital property where the husband depleted the marital estate by gambling and fraudulently obtaining credit cards on which he charged over $100,000. Similarly, we also upheld an unequal division of property where the wife excessively consumed alcohol and drugs, resulting in massive medical bills and the expenditure of marital funds to pay those expenses. *Forsgren v. Forsgren*, 4 Ark.App. 286, 630 S.W.2d 64 (1982). In *Stover v. Stover*, 287 Ark. 116, 696 S.W.2d 750 (1985), the su-

preme court affirmed an unequal division of marital property where the wife was convicted of conspiring to murder the husband.

The trial court in this case determined that it would be inequitable to evenly divide the marital property. Like the spouses in *Keathley* and *Forsgren*, the appellant dissipated marital assets by twice setting fire to the marital home and by transferring items of marital property, namely the tractor and vehicle, to the parties' son. Comparable to the decision in *Stover*, appellant attempted to murder appellee by shooting her four times at close range. The trial court considered appellee's diminished state of health after appellant shot her and found that appellant's violent attack left appellee without the ability to earn a living. Upon our de novo review, we are convinced that the trial court did not err by considering appellant's actions in making an unequal division of marital property.

Affirmed.

HART, J., agrees.

GLOVER, J., concurs.

DAVID M. GLOVER, Judge, concurring.

I agree that Mr. Frost has no standing to make an argument regarding the marital home. This is based upon his attempt to divest himself of it by deeding the property to the parties' son. His actions were for naught. Arkansas Code Annotated section 18–12–403 (Repl.2003) provides:

No conveyance, mortgage, or other instrument affecting the *homestead* of any married person shall be of any validity, except for taxes, laborers' and mechanics' liens, and purchase money, unless his or her spouse joins in the execution of the instrument, or conveys by separate document, and acknowledges it.

(Emphasis added.) Our supreme court, in *Blackford v. Dickey*, 302 Ark. 261, 264, 789 S.W.2d 445, 446 (1990), has construed this statute:

> The language of this statute could not be clearer. We have long held that deeds made without regard to this statute are void and leave the title as if they had not been made. *Pipkin v. Williams*, 57 Ark. 242, 21 S.W. 433 (1893).

Without Mrs. Frost joining in the deed, it is not a conveyance and is void.